*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0023p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ANTHONY GARNER et al.,
            *Plaintiffs-Appellants,*

MERRIE M. FROST,
            *Attorney-Appellant,*

            *v.*

CUYAHOGA COUNTY JUVENILE COURT et al.,
            *Defendants-Appellees.*

No. 07-3602

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-01286—John R. Adams, District Judge.

Argued: October 30, 2008

Decided and Filed: January 22, 2009

Before: CLAY, GILMAN, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Merrie M. Frost, Cleveland, Ohio, for Appellants. Charles E. Hannan, CUYAHOGA COUNTY PROSECUTOR'S OFFICE, Cleveland, Ohio, for Appellees. **ON BRIEF:** Merrie M. Frost, Cleveland, Ohio, for Appellants. Charles E. Hannan, David G. Lambert, CUYAHOGA COUNTY PROSECUTOR'S OFFICE, Cleveland, Ohio, for Appellees. Richard Randolph Renner, TATE & RENNER, Dover, Ohio, for Amicus Curiae.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. The appellants are 12 African-American employees of the Cuyahoga County Juvenile Court (the CCJC) and their attorney Merrie M. Frost. They appeal the district court's order imposing costs and attorney fees against them for maintaining frivolous discrimination claims long after those claims had clearly become

1

groundless. For the reasons set forth below, we **AFFIRM** in part and **REVERSE** in part the judgment of the district court, and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A.    Parties on appeal

The CCJC itself was neither a party below nor is a party to this appeal, even though this case has been styled *Garner v. Cuyahoga County Juvenile Court*. Instead, the appellees are a number of the CCJC's administrators and supervisors who were sued in both their official and individual capacities. Because a suit against individuals in their official capacities is legally the same as a suit against the public entity employing them, they will be henceforth referred to as the CCJC. Numerous employees brought suit against the CCJC, alleging that it wrongfully terminated them in violation of Ohio law, that it violated their rights under the Equal Protection Clause of the Fourteenth Amendment, and that it retaliated against them for engaging in activities that are protected by law, such as the filing of a civil rights lawsuit. Some of the employees also claimed that the CCJC intentionally subjected them to emotional distress.

Not all of the original plaintiff-employees, however, are appellants in this case. The ones who have appealed are Spencer Bellamy, Sonja Colwell, Tiffanie Dennis, Anthony Garner, Shelley Isom, Terrance Jenkins, Heather McCollough, Monique Moore, Nathaniel Prather, Bruce Richardson, and Thomas Washington (collectively, the employees). This appeal does not concern the merits of the employees' claims because this court has already addressed those claims in a prior proceeding. *See Garner v. Cuyahoga Cty. Juvenile Ct.*, 194 F. App'x 279 (6th Cir. 2006) (affirming the district court's order granting the CCJC's motion for summary judgment with respect to all of the claims raised by the employees), *cert. denied*, 127 S. Ct. 1915 (2007). Instead, the employees are contesting the district court's order holding them jointly and severally liable for the CCJC's attorney fees.

Attorney Frost is also named as an appellant. She contests the district court's decision to sanction her by holding her jointly and severally liable for the same award of

attorney fees to the CCJC. For convenience, we will refer to the employees and Frost together as the "appellants."

**B.     Procedural background**

The district court's opinion provides a comprehensive procedural history. That history will not be recounted here except to the extent relevant to this appeal.

*1.     The district court's summary judgment orders*

Attorneys Merrie Frost and Timothy Ita independently filed, on behalf of their respective clients, a total of three separate lawsuits in state court against the CCJC. These cases were each removed to federal court on the basis of federal subject-matter jurisdiction and later consolidated. The consolidated federal complaint listed 14 plaintiff-employees and included the following counts: "termination in violation of Ohio's public policy," "employment discrimination in violation of Ohio Revised Code § 4112," "an equal protection violation brought pursuant to 42 U.S.C. § 1983," "malicious conduct warranting a punitive damages award," and "intentional infliction of emotional distress, unlawful retaliatory discharge and discipline, civil conspiracy, and civil aiding and abetting." *Garner*, 194 F. App'x at 280. The employees requested, among other things, compensatory and punitive damages in excess of $10 million. This court has previously described the motion practice that followed:

> In July of 2003, CCJC filed a motion for partial judgment on the pleadings against Bellamy, Moore, and Washington, arguing that the federal claims raised by these three employees were barred by the statute of limitations because they had not been employed by CCJC within two years preceding the action. While this motion was pending, the discovery deadline was set for July 31, 2003. In September of 2003, CCJC filed a motion requesting that the district court increase the page limit for dispositive motions from 30 pages to 50 pages, which the court denied. Also in September of 2003—two months after the discovery deadline had passed—the plaintiffs requested leave to take an additional deposition, which the court also denied.
>
> CCJC soon thereafter filed 11 motions for summary judgment, pertaining to all the employees other than Bellamy, Moore, and Washington. The employees filed an opposing memorandum accompanied by affidavits and exhibits. At a pretrial conference following the filing of the summary judgment motions and the response, the district court, on its own initiative,

permitted the employees to file an additional memorandum in opposition to CCJC's summary judgment motions. They did so in December of 2003.

Also in December of 2003, CCJC sought a continuance of the trial date, originally set for January of 2004, in part due to the pendency of the dispositive motions. The district court agreed to set aside the January trial date. On December 31, 2003, the employees filed a motion to "update affidavits and exhibits" in response to CCJC's motions for summary judgment. The district court denied the employees' motion, reasoning that the deadline had long passed.

By March of 2005, the district court had granted summary judgment in favor of CCJC with respect to all of the employees, including Bellamy, Moore, and Washington.

*Id.* at 280-81.

Individual summary judgment orders, including more than 250 pages of discussion, were issued by the district court. All of the orders granted summary judgment in favor of the CCJC. This court affirmed the various orders on appeal, explaining as follows:

The district court held that Bellamy, Brown, Dennis, Garner, Isom, Lilly, Moore, Richardson, and Washington had failed to present *any* evidence to support their state and federal claims of racially motivated employment discrimination and retaliation. It further held that Colwell, Jenkins, McNear, McCollough, and Prather had failed to present *sufficient* evidence to support their claims. Aside from the differences between the failure to present any evidence and the failure to present sufficient evidence, the district court's summary judgment orders contain remarkably similar legal analysis.

Although the employees argue that the district court ignored or "changed" important evidence of racial discrimination on the part of CCJC, this contention is unsupported by the record. The district court engaged in a careful analysis of the facts as they pertained to each employee's claims, and it determined that the allegations of racial discrimination and other unlawful behavior were unfounded. In their brief, the employees continue to proffer the same assertions raised below, failing in almost all instances to cite to the record. Not only do the employees fail to base their allegations on facts in the record, they also fail to offer any relevant criticism of the district court's legal analysis.

Because the reasoning that supports summary judgment for CCJC has been clearly articulated by the district court in its thorough and well-written opinions, and because we are unpersuaded by the employees' argument that the court displayed favoritism and bias in rendering its procedural orders, the issuance by us of a detailed written opinion would be unduly duplicative.

*Id.* at 283-84 (emphases in original).

### 2.        *Imposition and calculation of costs and attorney fees on the employees*

The CCJC subsequently sought to recoup the expenses associated with defending itself against the employees' claims in light of its successful summary judgment motions. It filed motions requesting an award of costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and sought attorney fees under 42 U.S.C. § 1988.

The district court granted the CCJC's motion for costs under Rule 54(d) in August 2005. In a separate order issued in March 2007, the court held 13 of the employees jointly and severally liable for those costs in the amount of $69,345.28. Those 13 employees are Bellamy, Brown, Dennis, Garner, Isom, Jenkins, Lilly, McCollough, McNear, Moore, Prather, Richardson and Washington. Because Colwell had filed for bankruptcy, she was excluded from this judgment. The employees have waived arguments relating to this award of costs. *See* Part II.C. below.

In an earlier order issued in October 2005, the district court had imposed attorney fees on 10 of the employees, pursuant to 42 U.S.C. § 1988(b), for filing claims that were "frivolous, unreasonable, and without foundation," and because "these employees should have dismissed their claims after discovery had shown that they were without factual support." The court reached this conclusion despite being "very aware that awarding attorney's fees to the defendants under § 1988 in a case such as this may have a chilling effect on potentially meritorious civil rights employees," and after acknowledging that it was an "extreme sanction." The court concluded that

> the defendants are entitled to attorney's fees for the preparation of motions for summary judgment pertaining to all of the employees' claims except those of employees Jenkins, McCollough, Prather and Wesley [who was voluntarily dismissed] and the following claims of employees Washington, Bellamy, and Moore [which were dismissed by stipulation]: "(1) Count III, claims brought under 42 U.S.C. Section 1983; (2) Count V, Retaliation; (3) Count VI, Respondeat Superior; (4) Count VII, Civil Conspiracy; and, (5) Count VIII, Civil Aiding-Abetting.

(Brackets added.)

Those employees ultimately held jointly and severally liable to satisfy the award imposed under § 1988 were Bellamy, Brown, Dennis, Garner, Isom, Lilly, McNear, Moore, Richardson, and Washington. In other words, with the exception of Jenkins, McCollough,

and Prather, every employee who was held liable for costs under Rule 54(d) was also held jointly and severally liable for attorney fees. The latter three employees were excluded from the attorney-fee award because the court determined that some of their claims were not frivolous. As previously noted, Colwell was excluded from this group because she filed for bankruptcy, and Wesley was excluded from both the awards of costs and attorney fees because he had already been voluntarily dismissed as a party.

To support its finding that the employees' claims were frivolous, the district court addressed the evidentiary basis—or lack thereof—with respect to each count of the consolidated complaint. Reproducing that discussion in full would unnecessarily duplicate the district court's lengthy opinion. We will highlight, nonetheless, some of the district court's findings to provide context for the analysis that is set forth in Part II. below.

Virtually all the employees claimed that the CCJC discriminated against them on the basis of their race, retaliated against them for engaging in "protected activity" in violation of Ohio Revised Code 4112.02(I), wrongfully discharged them "in violation of public policy" (which is a cause of action available to at-will employees only), and/or intentionally subjected them to emotional distress. In general, the court found that "most of the claims of employees" Bellamy, Brown, Dennis, Garner, Isom, Lilly, McNear, Moore, Richardson, and Washington were "frivolous, unreasonable, and without foundation."

Despite finding that most of the employees' claims were frivolous, the district court did not think that all of them were. The court distinguished between two categories of employees: (1) those who "failed to provide *any* evidence" in support of their claims, and (2) those who "failed to provide *sufficient* evidence." (Emphases in original.) Labeling the first category as those who "failed to provide *any* evidence" is potentially misleading, however. The court did not likely mean that the employees in this group failed to proffer evidence to satisfy any of the elements of their claims. Some of the employees, for example, easily satisfied an essential element of their wrongful-termination claims by establishing that they had in fact been terminated. Instead, the court seemingly intended the no-evidence category to include those employees who failed to satisfy a basic element of their claims even "after discovery had shown that they were without evidentiary support." The court placed the following employees in the no-evidence group: Bellamy, Brown, Dennis, Garner,

Isom, Jenkins, Lilly, Moore, Richardson, and Washington. Except for Jenkins, everyone in this group was ultimately held jointly and severally liable for attorney fees under 42 U.S.C. § 1988.

The insufficient-evidence group included Colwell, McCollough, McNear, and Prather. Jenkins was also put in this group, although the district court failed to explain why it placed him in both categories. In any event, the insufficient-evidence group appears to reflect the district court's acknowledgment that "[s]ome of the claims of the employees . . . were not frivolous." The district court addressed the claims of Jenkins, McCollough, and Prather in particular. These employees lost on summary judgment just like the members of the no-evidence group. Nevertheless, the district court found that their claims were not wholly frivolous because they were able to establish a prima facie case of racial discrimination, even though they were unable to show that the CCJC's proffered legitimate reasons for the alleged adverse actions against them were simply pretexts to mask discrimination. Ultimately, neither Jenkins, McCollough, nor Prather were held jointly and severally liable for attorney fees under 42 U.S.C. § 1988.

The district court did not indicate why it included Colwell in the insufficient-evidence group. Colwell was presumably included because she provided at least a scintilla of evidence to support her discrimination claims. Specifically, Colwell alleged that one of her supervisors referred to another employee as a "white boy," referred to lead-detention officers as "his people," and said that "you people don't understand, you're not the same grade." As with Jenkins, McCollough, and Prather, the district court did not hold Colwell jointly and severally liable for the attorney fees, and she is not involved in this appeal due to her filing for bankruptcy.

McNear was also placed in the insufficient-evidence category, although the record is again not clear as to why. The court reiterated its conclusion, first expressed at the summary judgment stage of the case, that because McNear did not suffer a materially adverse employment action, she had failed to establish a prima facie claim of retaliation under Ohio Revised Code § 4112.02(I). McNear is nonetheless the only employee in the insufficient-evidence group that the district court held jointly and severally liable for the attorney fees.

Other employees alleged retaliation claims under Ohio law that were in some ways similar to McNear's claim. Brown, Colwell, Isom, and McCollough each stated that the CCJC subjected them to adverse employment actions as a result of participating in "protected activity," including this litigation. For example, Isom claimed that, by forcing her to use vacation time to attend to her duties as a plaintiff, the CCJC retaliated against her for filing suit against it. But the district court noted that they failed "to establish a causal connection between the filing of the case at bar and the CCJC's requirement that they use personal time to attend to matters related to the case at bar."

The preceding examples are highlights of the reasoning behind the district court's determinations that the employees filed frivolous claims. Having found the employees liable for costs and attorney fees, however, the court still had to determine how much the CCJC was entitled to receive. The CCJC requested $663,804.88 in attorney fees, which it computed by adding "litigation fees" that were presumably fees attributable to discovery ($401,405.20), fees attributable to defending against the claims brought by Garner, Richardson, Brown, Dennis, Isom, and McNear ($75,487.56), fees attributable to defending against the claims brought by Moore, Bellamy, and Washington ($48,534.50), trial preparation fees ($98,437.75), and the expense of trying to recover attorney fees and costs from the employees ($39,939.87). In a March 2007 order, the district court found that the documentation that the CCJC submitted supporting these figures was adequate.

Pursuant to the district court's October 2005 order, the CCJC's request of $663,804.88 did not include any time spent defending against the claims of Jenkins, McCollough, and Prather. The court also refused to permit the CCJC to recover fees for preparing a motion to compel discovery because the pleading violated a local discovery rule obligating the parties to contact the court by phone before filing certain discovery motions. Approximately $3,700 was therefore subtracted from the CCJC's request. That left $660,103.49 that the CCJC was allowed to recover from the employees for filing frivolous suits.

### 3.          *Imposition and calculation of sanctions against the employees' attorneys*

In addition to the CCJC asking the district court to award it costs under Rule 54 and attorney fees under 42 U.S.C. § 1988, the CCJC asked the court to impose sanctions against the employees' attorneys under 28 U.S.C. § 1927, Rule 11 of the Federal Rules of Civil Procedure, Ohio Revised Code § 2323.51, and the court's inherent authority.  The court granted that request pursuant to § 1927, but denied the request to the extent that it was based on Rule 11, Ohio law, or the court's inherent authority.  In reviewing the request, the court observed "[t]here is indeed little, if any, evidentiary support for any of those claims in this record, and no reasonably prudent attorney, having performed an ongoing investigation, would have filed or continued prosecuting those claims."  The district court explained its decision to impose sanctions as follows:

> Attorneys Frost and Ita engaged in conduct proscribed by 28 U.S.C. § 1927 which multiplied the litigation unreasonably or vexatiously.  The conduct also caused "excess costs."  Because the Court believes that employees' counsel intentionally pursued meritless claims, the Court will award the defendants fees under § 1927 for the hours related to the preparation of the summary judgment motions and some of the discovery conducted by the parties.

> The Court recognizes that the extensive discovery requested and responded to by the defendants in order to prevail on summary judgment does not constitute vexatious conduct on behalf of employees' counsel. However, the employees' claims in the case at bar were shown to be patently without merit in their responses to written discovery. Defendants issued each plaintiff detailed interrogatories, requests for admissions, and requests for documents, asking the employees to identify each and every instance in which they had been personally subjected to acts of discrimination, acts of harassment, treated differently based on their race, retaliated against, or been subject to a hostile environment as a result of each individual defendant's actions. Moreover, the Court had to resolve the discovery issues that remained between the parties at a conference conducted on May 21, 2003.

Having decided that sanctions against Attorneys Frost and Ita were appropriate, the district court still had to determine the appropriate amount.  Before the court issued its final judgment setting the amount of the total awards under Rule 54, 42 U.S.C. § 1988, and 28 U.S.C. § 1927, however, Attorney Ita filed a motion that requested permission to withdraw retroactively (*nunc pro tunc*) and to be excused from paying the sanctions.

In an affidavit and explanatory memorandum, Ita noted that Frost had left his law firm on October 3, 2003. He claimed that he was not involved in this litigation after that date. Ita asserted, moreover, that none of his pre-October 3 behavior in this case could reasonably be characterized as vexatious. He nevertheless acknowledged that he should have filed a motion to withdraw at an earlier date. In early February 2006, the district court granted Ita's motion to withdraw *nunc pro tunc* and excused him from paying the attorney fees, noting that although the employees had "some disagreement about the factual allegations in attorney Ita's affidavit," they otherwise had "no other response." This left Frost as the only remaining attorney subject to sanctions.

Having previously determined that Frost was subject to sanctions under § 1927, the district court held that the appropriate sanction was to make her jointly and severally liable for the $660,103.49 attorney-fee award previously imposed on the employees. The district court did not explain why this amount was an appropriate sanction under § 1927.

### 4.    *This appeal*

A month after the district court's final order determining the amount of costs and attorney fees owed, eight of the employees who were held jointly and severally liable filed a timely notice of appeal. The notice specifically states that the appellants are appealing the order "granting the defendants sanctions in the amount of $660,103.49." Brown and Lilly were not named in the notice of appeal even though they were among those held jointly and severally liable. But Colwell, Jenkins, McCollough, and Prather are named in the notice even though they were not ordered to pay the attorney-fee award. In sum, the remaining employee-appellants are Bellamy, Colwell, Dennis, Garner, Isom, Jenkins, McCollough, McNear, Moore, Prather, Richardson, and Washington. Finally, in October 2008, we granted a motion filed by the National Employment Lawyers Association (NELA) requesting permission to file a brief as amicus curiae on behalf of the appellants.

## II. ANALYSIS

## A. Standard of review

The appellants assert, without citing any authority, that we should review all of the district court's rulings de novo. But this assertion is contrary to the well-settled rule that we

will "review a district court's award of attorneys fees under 42 U.S.C. § 1988 based on an abuse of discretion standard." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 302 (6th Cir. 2008) (citation and internal quotation marks omitted). We also review a district court's imposition of sanctions on an attorney pursuant to 28 U.S.C. § 1927 under the same standard. *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007).

"Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 402 (6th Cir. 2001) (citation omitted). Such an error occurs where the district court "relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard." *Wikol ex rel. Wikol v. Birmigham Pub. Sch. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004). Furthermore, "[i]n light of a district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters, an award of attorneys' fees under § 1988 is entitled to substantial deference." *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000) (citations and internal quotation marks omitted).

**B.       Imposition of costs against the employees under Rule 54(d)**

Before reaching the merits of this appeal, we note that the appellants apparently do not contest the $69,345.28 award of costs that the district court imposed under Rule 54(d) of the Federal Rules of Civil Procedure. The appellants' notice of appeal specifically states that they challenge the court's order "granting the defendants sanctions in the amount of $660,103.49," but is silent as to the award of the $69,345.28 in costs. Nor does the appellants' brief mention the imposition of costs against the employees. Indeed, Rule 54(d) is never even cited in the brief. We therefore lack jurisdiction to consider the district court's ruling as to the imposition of costs.

**C.       Imposition of joint and several liability for attorney fees under 42 U.S.C. § 1988**

Turning to the issues raised on appeal, the employees contend that the district court erred by concluding that their claims were frivolous. Before assessing their arguments, however, we need to resolve a threshold issue about whether all of the employees named in the notice of appeal are appropriately considered appellants.

### 1.     Some of the appellants named in the notice of appeal do not present appealable issues

There are a total of 13 appellants named in the notice of appeal: 12 employees and Attorney Frost. Of the 12 employees, 4 of them—Colwell, Jenkins, McCollough, and Prather—have no reason to appeal the $660,103.49 award of attorney fees because the district court did not hold them liable for the award. The court did not impose either costs or attorney fees on Colwell because she filed for bankruptcy. As for Jenkins, McCollough, and Prather, the district court held that some of their claims were not frivolous and therefore did not impose attorney fees on them under 42 U.S.C. § 1988. These latter three appellants are still subject to the $69,345.28 award of costs under Rule 54(d), however, because they have not appealed that award. *See* Part II.B. above. Colwell, Jenkins, McCollough, and Prather therefore have no stake in this appeal because they are not liable for the attorney fees in question and have waived any arguments against the award of costs imposed under Rule 54(d). This leaves the following eight employees who still have a stake in this appeal: Bellamy, Dennis, Garner, Isom, McNear, Moore, Richardson, and Washington. Before discussing their claims, the applicable legal framework is described below.

### 2.     Legal framework for imposing attorney fees

The appellants' core argument is that, because their legal claims were allegedly not frivolous, the district court abused its discretion in granting attorney fees to the CCJC under § 1988. Section 1988 provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). In reviewing the court's award under this section, we recognize that awarding attorney fees against a nonprevailing plaintiff in a civil rights action is "an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986). The Supreme Court has cautioned that

> it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not

emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit . . . .

Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

Against the backdrop of *Christiansburg*'s cautionary language, this court has held that "a prevailing *defendant* should only recover upon a finding by the district court that 'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994) (quoting *Christiansburg*, 434 U.S. at 421 (1978)) (emphasis in original). To determine whether a suit is frivolous, we consider "whether the issue is one of first impression requiring judicial resolution, whether the controversy is sufficiently based upon a real threat of injury to the plaintiff, whether the trial court has made a finding that the suit was frivolous under the *Christiansburg* guidelines, and whether the record would support such a finding." *Tarter v. Raybuck*, 742 F.2d 977, 986 (6th Cir. 1984) (quoting *Reichenberger v. Pritchard*, 660 F.2d 280, 288 (7th Cir. 1981) (citations omitted)). We must also review "the record below . . . to determine whether the district court's finding is factually supported." *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001).

Courts must be particularly careful in conducting hearings to determine whether sanctions should be imposed against both plaintiffs and their attorneys for bringing frivolous claims. These situations are especially prone to raise conflicts of interest because each has an incentive to blame the other for bringing the frivolous claims at issue. In addition, such cases create an incentive for attorneys to abandon their clients in order to avoid personal liability. *See In re Ruben*, 825 F.2d 977, 985 (6th Cir. 1987) (pointing out the "inherent problem in a sanction hearing addressed to both a plaintiff and her attorneys, where the plaintiff and attorneys are not separately represented"). We turn now to discuss whether the employees' claims were properly deemed to be frivolous.

### 3.     *Disparate-treatment claims*

The arguments as developed by NELA's amicus brief on behalf of the employees are often clearer than those presented in the appellants' brief. We will therefore refer to NELA's arguments throughout the following analysis. *See Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 445 (2d Cir. 2001) (noting that an amicus brief can be helpful in elaborating issues properly presented by the parties).

NELA argues that the record shows significant evidence of disparate treatment that the district court did not acknowledge. The first example NELA provides is that Colwell, Jenkins, and McCollough were rejected for a Shelter Care Coordinator position in favor of a Caucasian with less experience. NELA adds that, with respect to McCollough, "this decision was accompanied by a comment from an administrator saying that he 'sent the white boy over to get the job.'" But all of this evidence is irrelevant to the issue on appeal because the district court did not hold Colwell, Jenkins, or McCollough liable for the attorney fees in question.

NELA's brief also avers that there was sufficient evidence of discriminatory disciplinary treatment, providing four examples: (1) the termination of Garner and Moore after they reported allegedly illegal activities, (2) the discipline or attempted discipline of Dennis, Isom, McNear, and Prather for infractions for which Caucasian employees were allegedly not disciplined, (3) Bellamy's suspension for having reported allegedly illegal activities of her supervisor, and (4) an allegedly false accusation made against Brown. The CCJC responds that the district court did not abuse its discretion in finding these claims frivolous because none of the employees on appeal "could establish any racial dimension to their claims" and that "[n]one could establish a *prima facie* case of discrimination."

Neither NELA's nor the CCJC's arguments are entirely persuasive. NELA's argument is unpersuasive because it implies that, because certain employees were able to satisfy a few elements of their prima facie case for a disparate-treatment claim, their claims were for that reason alone not frivolous. If that were the case, then any plaintiff who could partially satisfy his or her prima facie case could confidently evade an award of attorney fees under § 1988. This implication stands in tension with *Christiansburg*, which permits district

courts to impose attorney fees if a plaintiff continues to litigate after the claim clearly becomes "frivolous, unreasonable, or groundless." *See* 434 U.S. at 422.

But the CCJC's argument is not wholly persuasive either. Part of the CCJC's argument, as formulated, proves too much. In particular, the CCJC seems to suggest that wherever a plaintiff fails to state a prima facie case for discrimination, an award for attorney fees against the plaintiff is appropriate. This argument is unpersuasive because it also diverges from *Christiansburg*'s cautionary language, which counsels that "a party may have an entirely reasonable ground for bringing suit" even though he might not "ultimately prevail." *See id.* at 421-22. In the context of a disparate-treatment claim, the question of whether a plaintiff has provided sufficient evidence to establish a prima facie case of discrimination might be a close one. A claim likely would not be frivolous under such circumstances.

The appellants have raised a serious issue. If we were reviewing the district court's determinations de novo, there might be room for reasonable disagreement regarding whether some of the employees' claims warranted a finding of frivolousness. But the applicable abuse-of-discretion standard of review requires us to give "substantial deference" to the court's finding "[i]n light of a district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters . . . ." *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000) (citations and internal quotation marks omitted).

Both the appellants and NELA argue, however, that because Attorney Frost previously won a race-discrimination claim against the CCJC, this somehow suggests that the present case was not entirely frivolous. NELA also contends that the CCJC's prior acts of discrimination are relevant to the present case. In support of this argument, NELA cites *Spulak v. K-Mart*, 894 F.2d 1150 (10th Cir. 1990), for the proposition that "[a]s a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent." *Id.* at 1156. The CCJC responds that "[t]he fact that another former employee obtained a favorable verdict (in a case that remains subject to appellate proceedings) does not establish that *these* employees' personal claims had any merit."

We find the CCJC's response persuasive. Nothing in particular can be inferred from the bare fact of a prior adverse verdict against the CCJC. Such an inference would imply that any employer who has lost a discrimination claim would be permanently barred from recovering attorney fees against subsequent frivolous claimants. The appellants would have had a stronger argument if they had presented relevant evidence deriving from Frost's prior successful jury verdict against the CCJC. They have not done so. We therefore reject the argument that a prior adverse verdict against the CCJC, in and of itself, provides evidence that the present claims were not frivolous.

Finally, the record indicates that Colwell and McCollough—both of whom are not subject to the attorney-fee award—presented isolated CCJC comments that were tinged with racial overtones. But this does not permit the other employees to insulate themselves from an attorney-fee award by pointing to the thin evidence provided by Colwell and McCollough. Such a holding would encourage frivolous "me-too" claimants to piggyback on the nonfrivolous claims of legitimate plaintiffs. If Colwell's and McCollough's evidence of CCJC discrimination were stronger, and if the other employees had established a clear nexus between themselves and that evidence, then we might have reached a different conclusion.

In sum, the appellants have not pointed to any relevant evidence in the record, or proffered convincing legal arguments, that suffice to show that the district court abused its discretion. We therefore find no error with the court's conclusion that the employees' disparate-treatment claims were frivolous.

### 4.        *Disparate-impact claims*

With respect to the disparate-impact claims, the district court determined that the employees failed to identify a specific policy that disproportionately harmed African-American employees. The most salient policy identified in the record was a job-audit process involving so-called Comprehensive Position Questionnaires (CPQs). These CPQs were designed by a consultant to help the CCJC develop a wage and salary plan that was internally equitable and externally competitive with other courts. Employees were required to fill out CPQs, which were then used to modify pay, title, job grade, and job requirements.

As a result of the CPQ process, CCJC data showed that 93.8% of African-American employees received a position upgrade, while only 70.1% of Caucasians did. The CCJC promoted 147 employees, including 84 (57.1%) African-Americans and 56 (38.1%) Caucasians between January 1998 and August 2003. These statistics are hardly supportive of the appellants' disparate-impact claims.

The employees, moreover, never hired an expert to contest the CCJC's statistics. Although Attorney Frost originally told the district court that she planned to hire an expert statistician to look at the relationship between race and the employees' pay rates and promotions, and that the expert would speak to both liability and damages, she never did so. The court observed that "[a]s a result of the employees['] placing the entire [CPQ] process at issue[,] . . . it was necessary for the defendants to obtain an expert review and opinion of the process in order to defend against the disparate impact claims alleged by the employees." In light of the CCJC's uncontested data, the court found that the employees' disparate-impact claims were frivolous.

NELA responds by arguing that the district court's analysis of the hiring system and job-audit process was deeply flawed because the court improperly relied only on "raw numbers." Furthermore, NELA points to isolated portions of the record that allegedly show informal filling of positions by Caucasian employees, job segregation, disparate pay practices, and disparate discipline.

Despite NELA's attempt to articulate specific CCJC policies retrospectively by piecing together fragments of previous factual allegations, there is no indication that the appellants took the disparate-impact claims seriously. The district court correctly observed that the employees, instead of identifying a specific practice that allegedly caused a disparate impact, simply provided a "laundry list of isolated incidents of purported discrimination without providing evidence of their impact upon the entire class." An even stronger indication that the appellants did not take their disparate-impact claims seriously is that they failed to hire an expert to either refute the CCJC's employment statistics or to identify a CCJC policy that created a disparate impact, even though Attorney Frost told the trial court that she intended to do so. Neither the appellants nor NELA has pointed to anything in the record causing us to form a "definite and firm conviction that the trial court committed a

clear error of judgment" regarding the disparate-impact claims. *See Berger v. City of Mayfield Heights*, 265 F.3d 399, 402 (6th Cir. 2001) (citation omitted).

### 5.	*Retaliation*

The next group of claims addressed by the appellants involves retaliation. Of the appellants who still have a stake in this litigation, the following seven alleged claims of unlawful retaliation under Ohio Revised Code § 4112.02(I): Bellamy, Dennis, Garner, Isom, McNear, Moore, and Washington. "For retaliation claims in Ohio, 'Federal law provides the applicable analysis for reviewing retaliation claims.'" *Baker v. Buschman*, 713 N.E.2d 487, 491 (Ohio Ct. App. 1998) (citation omitted)).

Under the applicable federal framework, the "anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). A prima facie case of retaliation requires a plaintiff to establish that

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000). To establish an adverse employment action under the third prong, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (citation and internal quotations omitted).

The district court held that all of the appellants' retaliation claims were frivolous. In particular, the district court found that Brown, Garner, Isom, and Moore "failed to establish a causal connection between the filing of the case at bar and the CCJC's requirement that they use personal time to attend to matters related to the case at bar." Dennis, according to the court, did not identify any act of retaliation causally linked to her filing a charge with the EEOC. The court found that Bellamy and Washington "did not

engage in any activity protected by Ohio Rev. Code § 4112.02(I) that could serve as the basis for a retaliation claim." Finally, McNear's claim failed because the court held that she did not suffer a materially adverse employment action.

NELA argues that the district court applied an erroneous legal standard because the definition of an "adverse action"—i.e., an employer's adverse conduct against an employee in response to that employee's engaging in a protected activity—has changed pursuant to the Supreme Court's decision in *Burlington Northern,* 548 U.S. at 68 (holding that an adverse action is one that "well might have dissuaded a reasonable worker" from engaging in conduct protected by Title VII).

With respect to the retaliation claims brought by Bellamy, Brown, Dennis, Garner, Isom, Moore, and Washington, NELA's argument is not persuasive. The district court found their claims to be frivolous for reasons unrelated to their ability to establish the existence of an adverse employment action. As previously noted, the court held that Brown, Dennis, Garner, Isom, and Moore failed to proffer any evidence of causation. Bellamy's and Washington's claims, on the other hand, were patently frivolous because they failed to show that they were engaged in an activity protected by Ohio law for the purposes of establishing a claim of retaliation. NELA's argument is therefore nonresponsive with respect to these employees.

But McNear's retaliation claim merits further discussion. The district court included McNear in the group of employees who presented insufficient evidence—i.e., what we have called the "insufficient-evidence" group. *See* Part I.B.2. above. By including McNear in this group, the court implied that at least one of her claims was not frivolous. This appears to be inconsistent with the court's conclusion that she should be treated as if she were part of the "no evidence" group that has been ordered to pay attorney fees under 42 U.S.C. § 1988.

Despite this apparent discrepancy, we find no error in the ultimate result. If anything, the district court's error was to include McNear in the insufficient-evidence group, as opposed to the no-evidence group, because even McNear's strongest claim—retaliation—was found groundless on the basis that McNear failed to establish a materially adverse employment action. In particular, the court stated that

> McNear did not suffer a materially adverse employment action due to: (1) a physical transfer to a different court building in August 2002; (2) defendant David's demand that she return a key to the Detention Center after she received a promotion and was transferred from the Detention Services department; or (3) the prohibition against eating lunch in her office adjacent to a Magistrate's courtroom.

The second and third actions listed above are indeed rather flimsy attempts to establish "adverse employment actions." Nor does the record indicate that McNear's removal from the detention center "produce[d] an injury or harm," which is a fundamental requirement for demonstrating retaliation. *See Burlington Northern*, 548 U.S. at 67. We thus find no error in the district court's conclusion that McNear's retaliation claim was groundless.

### 6. *Other claims*

The employees also alleged that they were wrongfully terminated in violation of public policy and had suffered the intentional infliction of emotional distress. These claims are not developed on appeal. We therefore have no reason to address whether the district court erred in concluding that these claims were frivolous. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the

court to . . . put flesh on its bones.") (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir.1995) (citation omitted)). The district court's conclusion that the these claims were frivolous will therefore not be disturbed.

### 7.        *Joint and several liability*

A district court's determination that plaintiffs are liable to pay attorney fees for bringing frivolous lawsuits, and the court's calculation of the total amount owed, are actions that are reviewed on appeal under the abuse-of-discretion standard. *Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir. 2006) (applying the abuse-of-discretion standard of review to the district court's application of the attorney-fee-award methodology). But the question of whether a district court has appropriately apportioned fees among multiple parties arguably raises a legal issue to be reviewed de novo. *See Turner v. D.C. Bd. of Elections and Ethics*, 354 F.3d 890, 896 (D.C. Cir. 2004) (deciding the criteria for the apportionment of attorneys fees as a legal issue); *Matter of Petroleum Servs., Inc.*, 3 F.3d 889, 896 (5th Cir. 1993) ("The question whether the harm . . . is capable of apportionment among two or more causes is a question of law.") (citation omitted). We need not settle the question in this case, however, because we would reach the same conclusion regarding apportionment under either the abuse-of-discretion or de novo standard of review.

The D.C. Circuit's decision in *Turner* is instructive for the purposes of the present appeal. In *Turner*, the appellate court held that where claims are "centered on a set of common issues" against jointly responsible parties, the district court should hold them jointly and severally liable for an award of attorney fees under 42 U.S.C. § 1988. 354 F.3d at 898. But where attorney fees derive from claims that are not in common to all of the responsible parties, such claims are not "truly fractionable" and fees should therefore be equitably apportioned among them. *Id.* Although *Turner* involved the apportionment of fees against defendants instead of plaintiffs, we see no reason to limit its holding to that circumstance. We instead read *Turner* to support the principle that, where multiple civil- rights plaintiffs are liable for attorney fees under § 1988 in the same proceeding, one plaintiff should not be required to pay for the attorney fees associated with defending against the claims of another plaintiff if the plaintiffs' respective claims are factually unrelated.

The employees here all shared a disparate-impact claim involving common allegations about the CCJC's employment practices. But this lone claim does not justify imposing the entire fee award jointly and severally among all of the employees in this case. Most of the individual employees' claims are in fact unrelated. The disparate treatment claims, for example, do not share a common factual nexus. And the retaliation claims similarly involved different allegations unique to each employee. Indeed, the employees' respective claims were sufficiently distinct that the district court decided to issue individual summary judgment orders against each one.

We therefore conclude that the district court erred in holding each employee jointly and severally liable with respect each other's claims, as opposed to individually liable, for attorney fees under 42 U.S.C. § 1988. The appropriate method of calculating attorney fees among the multiple employees will be addressed below.

### 8.      *Calculation of attorney fees; inability to pay*

Calculating attorney fees under 42 U.S.C. § 1988 begins with determining the so-called lodestar amount, which "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The district court's calculation of the lodestar value, as well as any justifiable upward or downward departures, deserves substantial deference, but only when the court provides a clear and concise explanation of its reasons for the fee award." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007) (citations and internal quotation marks omitted).

On appeal, the appellants have not contested the district court's basic lodestar calculation with respect to attorney fees under § 1988. Instead, they argue that the CCJC had the burden to prove the employees' ability to pay the attorney fees. They cite two unpublished cases in support of this proposition: *Seaton-El v. Toombs*, No. 95-1405, 1995 WL 723195 (6th Cir. Dec. 6, 1995), and *Colton v. Memorial Drive Trust*, No. 92-1006, 1993 WL 29663 (6th Cir. Feb. 8, 1993). The employees also contend that the district court abused its discretion by failing to consider their ability to pay—irrespective of who had the burden of proof. *See Wolfe v. Perry*, 412 F.3d 707, 724 (6th Cir. 2005) (holding that, under 42 U.S.C. § 1988, that "a nonprevailing plaintiff's ability to pay may be used as a factor to determine the size of the award, but not whether an award is appropriate in the first place").

The appellants' argument is without merit. As the district court noted, the above cases indicate that the party against whom sanctions are being sought has the burden to prove his or her inability to pay. *See Seaton-El*, 1995 WL 723195, at *1 ("Seaton-El [the sanctioned plaintiff] attempted to meet *his* burden of showing that he could not pay the costs that were demanded by filing a timely response to the defendants' motion, in which he repeatedly asserted that he could not afford to pay the award.") (emphasis added); *Colton,* 1993 WL 29663, at *4 ("Although ability to pay must be considered by a district court . . .[,] inability to pay should be treated like an affirmative defense, with the burden upon the party being sanctioned to come forward with evidence of their financial status.") (quoting *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1160 (10th Cir. 1991)). The employees have not identified any error in the district court's legal analysis on this point.

We are nevertheless troubled by the district court's failure to explain why the salary information provided to the court was insufficient to establish the employees' inability to pay. In particular, the court itself recognized, in the portion of its order addressing costs, that the employees had "modest incomes" averaging about $35,000 per year. We are therefore puzzled as to why this information was not addressed in the portion of the court's order discussing the calculation of attorney fees.

Our "primary concern in an attorney fee case is that the fee awarded be reasonable." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). That concern is heightened in cases such as this, where attorney fees are assessed against losing plaintiffs in a civil rights action, because such an award "is an *extreme sanction*, and must be limited to *truly egregious cases* of misconduct." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986) (emphasis added). Although the district court undoubtedly has discretion in determining whether awarding attorney fees is appropriate, it nevertheless "remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437. Indeed, "[a]t times, we have found an abuse of discretion where a district court fails to explain its reasoning adequately or to consider the competing arguments of the parties." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citing *Moore v. City of Paducah*, 790 F.2d 557 (6th Cir. 1986)).

The district court's obligation to "explain its reasoning adequately" exists irrespective of which party bears the burden of persuasion to demonstrate an inability to pay. As in any other context, absent some explication from the district court as to its reasoning on this particular issue, we can have no confidence that the district court properly analyzed the issue. Without some discussion of the basis of the district court's reasoning, meaningful appellate review is impossible. We conclude that the district court's failure to address this salary information amounts to a failure to provide a "clear and concise explanation of its reasons for the fee award," and we are therefore disinclined to give the degree of deference typically afforded to a district court's calculations of fee awards. *See Gonter*, 510 F.3d at 616 (citation and internal quotation marks omitted). On remand, the court should allow the employees an opportunity to demonstrate their inability to pay. If the employees cannot produce additional information in support of this affirmative defense, the court should consider the salary information already contained in the record in determining whether the employees have satisfied their burden. *See also In re Ruben*, 825 F.2d 977, 987 (6th Cir. 1987) (remanding to consider ability to pay despite arguable waiver of the claim).

The district court must ultimately match each employee's ability to pay his or her share of the attorney fees to be awarded (which is to be determined on an individual basis, not jointly and severally). In making this match, the court should clearly and concisely explain how the newly submitted information, or the salary data already in the record, was taken into account.

### 9.     *Calculation of attorney fees; date of accrual*

The parties disagreed during oral argument as to whether the attorney fees improperly included legal work done before the completion of discovery—i.e., the point in time at which the employees should have realized that their claims were frivolous and the lawsuit should have been voluntarily dismissed. Because the record is not clear on this issue, the district court should ensure on remand that the total attorney-fee award excludes fees incurred before the point in time when the individual employees should have known that their claims were frivolous. We presume that, for most of the employees, this point in time occurred at the close of discovery. But the district court should make a clear finding, for each of the individual employees, to determine whether this presumption is correct.

**10.        The impact of Attorney Frost's concession regarding attorney fees**

Our review of the record suggests that the fault for bringing the groundless claims in this case lies principally with Attorney Frost and not with her clients. Indeed, Frost graciously conceded during oral argument that, if there is anyone to blame for the litigation, she should be the one and not her clients. Frost's concession tempts us to simply instruct the district court to reverse the imposition of any liability against her clients under § 1988. But two considerations dissuade us from doing so. The first is the generally applicable principle that where a party has

> voluntarily chose[n] [an] attorney as his representative in the action . . . he cannot . . . avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 397 (1993) (citations and internal quotation marks omitted). Secondly, imposing fees against Attorney Frost alone might undermine the CCJC's ability to recover if she becomes insolvent.

We are therefore hesitant to conclude, solely on the basis of Attorney Frost's concession, that attorney fees should not be imposed on her clients under § 1988 and should instead be imposed only on her pursuant to § 1927. But Attorney Frost's concession remains relevant for the reasons discussed below.

**D.        Attorney sanctions under 28 U.S.C. § 1927**

The district court also imposed sanctions against Attorneys Frost and Ita under 28 U.S.C. § 1927. Specifically, they were held jointly and severally liable for the CCJC's award of attorney fees against the employees under 42 U.S.C. § 1988. Section 1927 provides that attorneys "who so multipl[y] the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The purpose of § 1927 is "to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios, Div. of Source Advantage, Ltd. v. Slater*, 465 F.3d 642, 646 (6th Cir. 2006). We turn first to the appellants' argument that

Attorney Ita should be compelled to share in the burden of joint and several liability because the district court erred in allowing him to withdraw *nunc pro tunc*.

### 1.       *The withdrawal of Attorney Ita*

Attorney Ita was originally held jointly and severally liable for the attorney fees along with the appellants. Before the fees were calculated, however, the district court allowed Ita to withdraw *nunc pro tunc*, even though he filed his motion to withdraw after the court had already sanctioned him. Attorney Frost did not object to Ita's withdrawal when it occurred. *See* Part I.B.3. above. The appellants now contend for the first time on appeal that the district court's decision constituted reversible error.

Rule 3(c)(1)(B) of the Federal Rules of Appellate Procedure requires an appellant, in the notice of appeal, to "designate the judgment, order, or part thereof being appealed." In this case, the appellants' notice of appeal specifies that they are appealing only "the judgment entry dated March 30, 2007 granting the defendants sanctions in the amount of $660,103.49." The notice fails to mention Ita's withdrawal. Moreover, the appellants have not served Ita with any of the papers filed in this appeal, as would be required by Rule 25(b) of the Federal Rules of Appellate Procedure were Ita a party to the appeal. In short, we lack jurisdiction over this belated claim and decline to address the merits of the argument.

### 2.       *Availability of sanctions against Attorney Frost*

There is tension within this court's jurisprudence as to the proper standard to apply in determining whether sanctions are warranted under § 1927. The district court relied upon the following standard set forth in *Wilson-Simmons v. Lake County Sheriff's Department*, 207 F.3d 818 (6th Cir. 2000):

> Sanctions under § 1927 are warranted when an attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party. . . . [W]hen an attorney knows *or reasonably should know* that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney. Bad faith is not required to support a sanction under § 1927.

*Id.* at 824 (citations and internal quotation marks omitted).

A more recent case, however, states that sanctions are appropriate under § 1927 only where the attorney "intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Red Carpet Studios*, 465 F.3d at 646. This language suggests a higher standard than the one described above in *Wilson-Simmons*. But we need not reconcile this apparently conflicting language because the district court found that Attorney Frost "intentionally pursued meritless claims," a finding that would satisfy either standard.

Curiously, the appellants never mentioned § 1927 in their briefs, focusing instead on Rule 11 of the Federal Rules of Civil Procedure. This focus is misplaced because the district court's order granting sanctions actually denied sanctions to the extent that they were based on Rule 11. And even if we were to construe the appellants' Rule 11-based arguments as a general objection to the imposition of sanctions under § 1927, the appellants have failed to raise any cognizable legal argument against the decision to impose sanctions under that section. Nor do the appellants point to any fact in the record that would justify disturbing the court's factual finding that Attorney Frost intentionally pursued meritless claims. We therefore find no error with respect to the imposition of sanctions under § 1927 against Frost, although the amount and relative responsibility as between her and her clients is to be determined on remand.

### 3.     *Appropriateness of joint and several liability as a sanction*

An attorney may be held liable under 28 U.S.C. § 1927 "solely for *excessive* costs resulting from the violative conduct." *Ridder v. City of Springfield*, 109 F.3d 288, 299 (6th Cir. 1997) (emphasis added) (holding that the district court did not abuse its discretion by imposing sanctions on an attorney for unreasonably and vexatiously multiplying proceedings in a civil rights lawsuit). Where an attorney's unreasonable and vexatious conduct "began with the filing of the complaint and persisted throughout the pendency of the case," this court affirmed the district court's finding that the attorney was liable under § 1927 to pay attorney fees that began to accrue when the complaint was filed. *Id.* This court has also upheld a judgment holding an attorney jointly and severally liable for attorney fees along with his clients as an appropriate sanction under § 1927. *Wilson-Simmons*, 207 F.3d at 821.

Because we are reversing the district court's judgment imposing $660,103.47 in attorney fees jointly and severally among the employees, we also reverse the court's judgment holding Attorney Frost jointly and severally liable for the same amount. But this does not mean that Frost will escape liability. In fact, Frost herself conceded during oral argument that she, if anyone, should be held liable for the attorney fees. We therefore remand with instructions to consider any proof that Frost may wish to present regarding her inability to pay, and to consider the appropriate amount of sanctions against her vis-a-vis her clients.

Holding a sanction hearing as to both plaintiffs and their attorney, where the plaintiffs are not separately represented, is inherently problematic because of the conflict of interest presented. *See In re Ruben*, 825 F.2d 977, 985 (6th Cir. 1987) (noting the "inherent problem in a sanction hearing addressed to both a plaintiff and her attorneys, where the plaintiff and [the] attorneys are not separately represented," because the attorneys might abandon their client's interests during the hearing). But many civil rights plaintiffs might be able to retain an attorney only on a contingency basis, and requiring such plaintiffs to obtain an attorney to defend themselves against sanctions might be unrealistic. Although Frost asserted during oral argument that she obtained her clients' informed consent to represent them on this appeal, we express no opinion on whether the applicable professional responsibility standards permit Frost to continue representing her clients in this matter. We leave the consideration of such representation issues to the district court on remand.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the portion of the district court's judgment (1) finding that the employees' claims were frivolous under 42 U.S.C. § 1988, and (2) finding that Attorney Frost engaged in conduct sanctionable under 28 U.SC. § 1927. On the other hand, we **REVERSE** the portion of the district court's judgment (1) holding the employees jointly and severally liable for $660,103.49 in attorney fees awarded under 42 U.S.C. § 1988, and (2) holding Attorney Frost jointly and severally liable for the same fees as a sanction under 28 U.S.C. § 1927.

With respect to the attorney fees to be imposed on the employees under 42 U.S.C. § 1988, we **REMAND** with instructions to (1) determine the point in time when each

employee's claim clearly became frivolous (which might simply be at the close of discovery), (2) calculate, on an individual basis, the attorney fees owed by each employee after that point in time, and (3) consider any new information proffered by the employees regarding their inability to pay, as well as relevant evidence on this issue that already exists in the record.

With respect to the attorney fees to be imposed on Attorney Frost under 28 U.S.C. § 1927, we **REMAND** with instructions to (1) determine the point in time when the pursuit of each of her clients' claims became unreasonable and vexatious, (2) calculate the attorney fees owed by her after that point in time, (3) decide whether that liability should be joint and several with each of her clients, and (4) consider any proof that she may wish to present regarding her inability to pay.

In summary, we **AFFIRM** in part and **REVERSE** in part the judgment of the district court, and **REMAND** the case for further proceedings consistent with this opinion.