**Darrell THOMPSON, Plaintiff–Appellant,**

v.

**The CITY OF MEMPHIS, a Tennessee Municipal Corporation;  Robert G. Wright, Deputy Chief;  Herbert L. Adair, Lt.;  and W.W. Herenton, in his representative capacity as Mayor of the City of Memphis, Defendants–Appellees.**

Nos. 02–5421, 02–5656.

United States Court of Appeals, Sixth Circuit.

Jan. 12, 2004.

Louis R. Lucas, Memphis, TN, for Plaintiff–Appellant.

Carrie Clark Thomas, Spence Law Firm, Memphis, TN, Jean E. Markowitz, Causey, Caywood, Taylor, McManus & Bailey, Memphis, TN, for Defendants–Appellees.

Before BOGGS, Chief Judge; GIBBONS, Circuit Judge; and GWIN, District Judge.[*]

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

GIBBONS, Circuit Judge.

Plaintiff-appellee Darrell Thompson participated in the second round of a bidding process for a position on the federal Trigger Lock Task Force in February 2000. He was denied a position despite the fact that he was ranked first on the list in terms of seniority because, according to defendants, it was felt that his disciplinary record would impact his effectiveness as a witness in federal court. The position ultimately was awarded to Norma B. Hayslett, a female ranked third on the list of applicants in terms of seniority. Thompson brought suit against the City of Memphis, Deputy Chief Robert G. Wright, and Lieutenant Herbert L. Adair, alleging that he had been discriminated against on the basis of his sex in violation of 42 U.S.C. § 2000e–2(a) of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1983, and the Tennessee Human Rights Act, §§ 4–21–101–4–21–1004 ("THRA"). Thompson also accused the defendants of conspiring to deprive him of a position on the task force in violation of 42 U.S.C. § 1985(3). The district court granted summary judgment to the defendants on all of Thompson's claims. For the following reasons, we affirm the judgment of the district court.

**I.**

The City of Memphis is a participant in a number of joint federal-state task forces, including the Safe Streets Task Force, the Trigger Lock Task Force, and the Auto/Cargo Theft Task Force. These task forces specialize in investigating certain types of crimes. The Trigger Lock Task Force ("the task force") operates under the direction of the United States Attor-

ney's Crimes Coordinator and is run under the auspices of the Bureau of Alcohol, Tobacco and Firearms of the United States Treasury Department ("ATF"). The task force is composed of personnel from the City of Memphis Police Department, the Shelby County Sheriff's Department and the ATF. In the past the task force has also employed personnel from the Federal Bureau of Investigation. The purpose of the task force is to investigate career criminals who are in violation of federal firearms laws. At the time of the events in this case, Agent Eugenio Marquez of the ATF was the Resident Agent in Charge of the task force.

In accordance with an agreement entered into between the City of Memphis and the Memphis Police Association ("the union agreement"), task force positions are filled using a bid process. The first step in the bidding process is the preparation of a personnel bulletin announcing the positions that are available and the time period for bidding. If the available positions require qualifications, then those qualifications must be listed on the bid notice. After the time period for bidding has ended, the bids are ranked by seniority and the supervisor filling the position may choose among the three most senior qualified applicants bidding for the position. Employees not selected are to be notified in writing of the reasons for their non-selection, and the union agreement specifically provides that those reasons may include "attendance and disciplinary patterns." If all positions are not filled in the first round of bidding, additional rounds are held.

In early 2000, Marquez informed Lieutenant Adair that more personnel were needed for the task force from the Memphis Police Department. Adair had been a member of the task force since 1994. He notified Inspector Robert Wright that the task force was seeking additional personnel, and Wright prepared a list of qualifications for the task force using information he received from the Memphis police personnel department and the United States Attorney's office. One of the qualifications listed was that "[a]pplicants must be able to pass a FBI and/or BATF background check and a background check necessary for appointment as a Special Deputy United States Marshal." The qualifications list also specified that an applicant's "disciplinary resume will be reviewed and used as a consideration for selection." The qualifications list was attached to a personnel bulletin announcing the availability of two positions on the Trigger Lock Task Force, in addition to openings on some of the other joint federal-state task forces.

The first round of bidding opened on January 21, 2000. Five officers bid for the two positions available on the task force. All five officers were men. Thompson did not participate. At the conclusion of the first round, a position was awarded to John C. Casad, a male who had been ranked fifth on the bid list. Bidders 1, 2 and 4 had each listed the Trigger Lock Task Force as their second choice and were awarded their first choice positions. Bidder 3 failed to pass the initial firearms test required by the federal government. A new personnel bulletin was posted on February 24, 2000, announcing a second round of bidding for the position that remained open after the first round. In the second round, Thompson bid for a position with the Trigger Lock Task Force, but he was passed over due to his disciplinary record. Bidder 2 did not have the one year of investigative experience required for the position, and the bid ultimately was awarded to bidder 3, Norma B. Hayslett.

In accordance with the union agreement, Thompson received a letter from Marquez of the ATF explaining why he had not

received a position on the task force. Wright had informed each of the federal task force agencies at the beginning of the process that if they passed over any officer who had seniority on the list of bidders, they had to put in writing the reasons for non-selection. Wright forwarded a sample rejection letter to each of the task forces. In his letter to Thompson, Marquez wrote:

A preliminary review of your personnel file has revealed several disciplinary actions that were sustained. It is felt these actions are not consistent with acceptable performance levels for this position and would adversely impact your effectiveness as a witness in Federal court.

Marquez also cited the language from the qualifications list notifying applicants to the task force that they had to be able to pass FBI and ATF background checks and a background check necessary for appointment as a Deputy United States Marshal. Thompson's personnel file reflects that the following disciplinary charges have been upheld against him: four counts of rough and careless handling of city property, five charges of neglect of duty, one charge related to the completion of records, one charge related to radio communications, one charge related to punctuality, and one charge related to attendance in court.

When he applied for a position with the task force in February 2000, Thompson was a sergeant assigned to the Homicide Bureau. His base pay was $43,519.69 annually. If Thompson had been selected to the task force in March 2000, his base pay would have been $43,519.69, and he would have been entitled to the same pay and benefits that he was already receiving as a sergeant in the Homicide Bureau. On July 12, 2000, Thompson made the list to be promoted to Lieutenant with the Memphis Police Department.

In his deposition, Thompson indicated that he believed the task force presented an opportunity to gain additional experience and training that could lead to future job opportunities. He also stated that he was aware of certain monetary advantages that came along with being on the task force, including a take-home car, a beeper or a cell phone, and increased opportunities for overtime. Victoria M. Johnson, Supervisor of Personnel with the Memphis Police Department, stated in her affidavit that neither Thompson's failure to receive a bid with the task force nor his denial letter will be factors affecting his future compensation.

Thompson brought suit against the City of Memphis, its Mayor, W.W. Herenton, Inspector Wright, and Lieutenant Adair. Thompson alleged that the defendants conspired to discriminate against him on the basis of his sex in violation of Title VII, § 1983, § 1985(3), and the THRA. Thompson asserted that the defendants, "in an effort to conceal their role in the discrimination[,] requested that the ATF write a letter stating that Plaintiff was not qualified" and that the letter contained statements which impaired his ability to continue to serve as a police officer. Thompson requested a permanent injunction to appoint him to the task force, an injunction requiring the removal of the rejection letter from his file, and compensatory and punitive damages for lost wages, impairment of earning capacity and pain and suffering.

The district court granted summary judgment in favor of the defendants on all of Thompson's claims. The court agreed with defendants Wright and Adair that they could not be held individually liable under Title VII and noted that Thompson had failed to put forth any direct evidence of discrimination. Thompson's statement at his deposition that another officer told

him that a lieutenant allegedly said he could not get the job on the task force because he was not a female was inadmissible hearsay that could not be considered on summary judgment. The court also held that Thompson had failed to make out a prima facie case of sex discrimination under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), because he had failed to produce evidence that he was treated differently than similarly situated female officers. The court noted that a female sergeant was denied a position on the Safe Streets Task Force due to her disciplinary record and that Thompson did not know whether Hayslett had any disciplinary infractions on her record. Because Thompson could not establish a claim of employment discrimination under Title VII, the court granted summary judgment in favor of the defendants on his remaining claims under § 1983, § 1985(3) and the THRA. Thompson appeals, arguing that the district court erred by failing to consider evidence that the City of Memphis was responsible for his non-selection and by relying on rejection letters given to employees applying for task forces other than the Trigger Lock Task Force.

## II.

This court reviews a district court's decision granting summary judgment *de novo.* *Terry Bar Sales Agency, Inc. v. All–Lock Co.,* 96 F.3d 174, 178 (6th Cir.1996). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

entitled to a judgment as a matter of law." In assessing the record to determine whether any genuine issues of material fact exist, this court views the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to avoid a grant of summary judgment in the defendant's favor. *Id.* at 248.

## A. Thompson's Title VII Claims

Thompson's first contention on appeal is that the district court erred by failing to consider the evidence he offered that the City of Memphis was the entity responsible for making the decision not to select him for the task force. Thompson points specifically to statements made in a report filed by the officer from the Equal Employment Opportunity Commission assigned to investigate his initial grievance ("the EEOC report"). In her report, the EEOC officer indicated that Adair told her that the ATF "had nothing to do with the selection process" and that "the decision not to select [Thompson] was that of the Memphis PD."[1] The defendants counter that the EEOC report is inadmissible hearsay and also point to affidavits from Wright and Adair in which they attest to their minimal involvement in the selection process as evidence that the City was not responsible for Thompson's failure to be selected.

The district court did not address the admissibility of the EEOC report in either of its decisions granting summary judgment, and it appears to have assumed, without deciding, that the City was responsible for making the decision not to select

---

1. Thompson also made statements in his deposition indicating that he felt that Wright and Adair were responsible for his non-selection simply because they were part of the police department administration.

Thompson for the task force. Thompson has produced no evidence other than the EEOC report that anyone employed by the City of Memphis was responsible for his non-selection. Wright admitted that he asked the task forces to send letters to rejected employees outlining the reasons why they had not been selected for positions. Adair admitted to informing the police department that there were positions available on the task force. Both Wright and Adair indicated that they retrieved personnel files during the second round of bidding for Marquez and Assistant United States Attorney Jennifer Webber and that they were both present when Marquez and Webber reviewed them. There is no evidence that either Wright or Adair participated in a significant way in the selection process, and if anything, the evidence seems to indicate that the ATF, and not the City of Memphis, was responsible for the decision-making at issue in this case. For example, Thompson's rejection letter is on ATF letterhead and signed by Marquez.

Regardless, even if we assume that Thompson has established that the City of Memphis and Wright and Adair were responsible for his non-selection, he cannot prevail under Title VII because he has not produced evidence to meet his evidentiary burden under the *McDonnell Douglas* framework for establishing a case of employment discrimination.

Thompson claims that the district court erred in concluding that he has not established a case of intentional employment discrimination under Title VII. His claim is one of reverse discrimination: he argues that the defendants did not offer him the job merely because they wanted to offer the position to a less-qualified female applicant. Under the familiar framework first established by the Supreme Court in *McDonnell Douglas* and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), a plaintiff alleging a violation of Title VII must first establish a prima facie case of employment discrimination. *McDonnell Douglas*, 411 U.S. at 801. A prima facie case is established if the plaintiff proves that (1) he was a member of protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a person outside the class. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992). If the plaintiff proves a prima facie case, the burden of production shifts to the employer to produce a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. Once a legitimate, non-discriminatory reason has been advanced, the plaintiff must demonstrate that the proffered reason is a pretext for intentional discrimination. *Id.* at 803.

This court has modified the requirements for establishing a prima facie case in situations involving claims of reverse discrimination. *Pierce v. Commonwealth Life Ins.*, 40 F.3d 796, 801 (6th Cir.1994). A prima facie case of reverse discrimination is established by showing (1) that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority," and (2) that the employer treated employees who were similarly situated but not members of the protected class differently. *Id.* (citations omitted).[2]

It is unnecessary to consider whether Thompson has satisfied the first

2. A plaintiff may also establish a prima facie case by offering direct evidence of discriminatory intent. *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111 (6th Cir.1987). As the district court noted, the only evidence Thompson has of direct discrimination is inadmissible hearsay. In his deposition, Thompson testified that a Sergeant Helldorfer told him that he could not get the job because he was not a female. This testimony is inadmissible

prong of the test for reverse discrimination under *Pierce* because he has not produced evidence that the City of Memphis treated him differently than similarly situated female applicants. A plaintiff must show that employees who are alleged to be similarly situated are similarly situated in *all respects*. *Mitchell*, 964 F.2d at 583 (citing *Stotts v. Memphis Fire Dept.*, 858 F.2d 289 (6th Cir.1988)). That is, the similarly-situated individuals with whom the plaintiff seeks to compare his treatment "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citations omitted).

As the district court noted, Thompson admitted that he was unaware whether Hayslett had a similar disciplinary record. Thompson instead chose to focus on the fact that Adair had a disciplinary record similar to his own in order to argue that his record was a mere pretext for discrimination. Leaving aside for the moment that Thompson has not shown that Adair's disciplinary record is as poor as his own, Adair's disciplinary record is irrelevant to Thompson's prima facie case. He has failed to produce evidence that similarly situated female employees were treated differently than he was during the selection process because he has not shown that Hayslett had a similar disciplinary record.

■ Furthermore, the defendants have offered a legitimate, non-discriminatory reason for Thompson's failure to receive a position on the task force and Thompson has not produced evidence that the reason was a pretext for intentional discrimination. The defendants argue that Thompson was not qualified for the position because of his disciplinary record. Both the union agreement and the qualifications list noted that an applicant's disciplinary record was an important factor in the decision-making process. The defendants have also presented evidence that both male and female applicants for positions on several other joint task forces were denied positions due to their disciplinary records. Although these employees were not similarly situated to Thompson in the sense that they were not applying for the same position at the same time as he was, the letters nevertheless indicate that hiring decisions were in fact based in part on a consideration of an applicant's disciplinary record. The only evidence Thompson cites to demonstrate that the use of his disciplinary record was a pretext for intentional discrimination is Adair's admission that he has had at least two disciplinary violations.[3] However, as has just been discussed, Thompson has not offered proof that Adair had the same number or even the exact same type of disciplinary violations as Thompson has.

Thompson cannot prove a prima facie case of employment discrimination because he has not produced evidence that he was treated differently than similarly situated female employees. The defendants have offered a legitimate, non-discriminatory reason why Thompson was not selected for the task force, and Thompson has failed to produce evidence that the reason is a pretext for discrimination. Thus, the district court did not err in concluding that

hearsay and may not be considered on a motion for summary judgment. *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999).

**3.** In his brief, Thompson makes much of the fact that Wright admitted in his deposition

that Adair's disciplinary record sounded similar. However, earlier on the same page of testimony, Wright said that he has never seen Adair's disciplinary record and that he did not know how many violations Adair had.

Thompson has failed to establish a case of employment discrimination under Title VII.

**B. Thompson's Claims Under § 1983 and § 1985(e)**

■ Thompson also alleged that the defendants deprived him of his right to equal protection in violation of 42 U.S.C. § 1983 because they intentionally discriminated against him on the basis of his sex. He claims that by conspiring to deprive him of his rights under § 1983, defendants also violated 42 U.S.C. § 1985(3). Thompson's claims under both § 1983 and § 1985(3) thus depend on him successfully establishing that the defendants discriminated against him on the basis of his sex. If he was not discriminated against, there has been no violation of his right to equal protection and no conspiracy to deprive him of his right to equal protection. *See Grano v. Dept. of Dev.*, 637 F.2d 1073, 1082 (6th Cir.1980) (noting that "A plaintiff who alleges disparate treatment by a state employer is bringing essentially the same claim under Title VII as under § 1983.").

Because the district court did not err in concluding that Thompson has failed to produce evidence that he was discriminated against on the basis of his sex, the court also did not err in concluding that summary judgment for defendants on his claims under § 1983 and § 1985(3) was appropriate.

**C. Thompson's Claims Under the THRA**

■ Finally, Thompson alleged that the City of Memphis violated his rights under the THRA by discriminating against him on the basis of his sex. He also asserts that Wright and Adair may be held individually liable under the THRA for their part in the plan to intentionally discriminate against him. The THRA is a comprehensive state anti-discrimination statute that was intended to prohibit discrimination in a manner consistent with federal civil rights laws. *Parker v. Warren County Util. Dist.*, 2 S.W.3d 170, 176 (Tenn.1999). Although the language of Title VII and the THRA differ slightly, Tennessee courts have concluded that the legislature intended the THRA to be coextensive with federal law and have indicated that they will look to federal case law interpreting Title VII for guidance in enforcing the THRA. *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 834 (Tenn.1997), *rev'd on other grounds by Parker*, 2 S.W.3d at 176. However, the THRA is broader than Title VII in at least one respect: An individual who aids, abets, incites, compels, or commands an employer to engage in employment-related discrimination may be held individually liable for violating the THRA. *Carr*, 955 S.W.2d at 836.

The district court subsumed the analysis of Thompson's claims under the THRA within its analysis of his claims under Title VII. Tennessee has applied the *McDonnell Douglas* framework to cases involving claims brought under the THRA. *Dobbs–Weinstein v. Vanderbilt Univ.*, 1 F.Supp.2d 783, 791 n. 10 (M.D.Tenn.1998). Because Thompson has not produced evidence permitting a finding of employment discrimination under Title VII, his claims of employment discrimination under the THRA are equally unsuccessful. It is therefore unnecessary to consider whether there is enough evidence in the record to support a finding that Wright and Adair aided and abetted the City's violation of the THRA because the City did not violate the THRA in the first instance.

**III.**

For the foregoing reasons, we affirm the judgment of the district court.