**Timothy WILLOUGHBY,**
**Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY,**
**Defendant–Appellee.**

No. 03–5501.

United States Court of Appeals,
Sixth Circuit.

July 14, 2004.

Charles R. Ray, Jeffery S. Frensley, Ray & Frensley, Nashville, TN, for Plaintiff–Appellant.

Keith D. Frazier, Elizabeth S. Washko, Ogletree, Deakins, Nash, Smoak & Stewart, Nashville, TN, for Defendant–Appellee.

Before: SILER and ROGERS, Circuit Judges; and FORESTER, District Judge.*

PER CURIAM.

Allstate Insurance Co. ("Allstate") demoted plaintiff Tim Willoughby for telling a joke containing the word "nigger" to his black subordinates. Willoughby, who is white, sued for race discrimination and retaliation, claiming Allstate did not similarly discipline black employees. The district court granted summary judgment against Willoughby, finding he failed to establish a prima facie case for either claim. We **AFFIRM**.

## BACKGROUND

Willoughby served as Allstate's only white technology manager in his department. He supervised James Randolph, Nek Polk, and Winston Moore, who are black. In March 2000, after hearing that Polk was ill, Randolph commented that younger employees are not as tough as older employees. Randolph's comment prompted Willoughby to tell a Richard Pryor joke with a character called Mud Bone. Willoughby's deposition described the joke:

> Mud Bone was an old character. And he told the story of how you used to be able, back in the olden days, used to be able to shoot a guy four or five times and stab a guy four or five times, and he'd still be all right. And then the final line was, they just not making niggers like they used to.

The following day, Willoughby and another supervisor told Moore that his job was going to be eliminated. Shortly thereafter, Moore registered a complaint about Willoughby's joke. After investigating, Allstate gave Willoughby a "job-in-jeopardy" notice and demoted him to a nonmanagerial position with the same pay.

After the demotion, Willoughby wrote a response letter challenging his demotion that raised the dismissal of sexual harassment allegations against Moore and the issue of race regarding employees leaving Allstate. Five months after his demotion, Willoughby requested and received a transfer to a lower-paying position in the claims department because he felt it was the only avenue for meaningful assignments and possible promotion.

Willoughby sued Allstate in Tennessee state court alleging violations of the Tennessee Human Rights Act. After Allstate removed to federal court, Willoughby amended his complaint with additional Title VII claims for racial discrimination and retaliation, which mirrored his Tennessee claims. He claimed Allstate disciplined black employees more favorably and that Allstate retaliated against him because of his letter asserting the same.

---

* The Honorable Karl S. Forester, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo, *Lautermilch v. Findlay City Schools,* 314 F.3d 271, 274 (6th Cir.2003), viewing the evidence in the light most favorable to Willoughby. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

## ANALYSIS

### Racial employment discrimination

■ For racial employment discrimination, Willoughby must demonstrate he was: (1) a member of a protected class; (2) subject to an adverse employment action; (3) qualified for the job; and (4) treated differently than similarly-situated employees outside the protected class for similar conduct.[1] *See Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir.1992). For purposes of summary judgment, Allstate conceded the first three elements, leaving the similarly-situated employee element.

Willoughby asserts for comparators two black managers, Jerry Surratt, who reportedly said Willoughby was having a sexual affair with Jennifer Waugh, and Karen Ray, who reportedly said she had "too many white males working for her." Willoughby's argument fails because these statements were evidenced only by inadmissible hearsay that we may not consider on summary judgment. *Sutherland v.*

*Michigan Dep't of Treasury,* 344 F.3d 603, 620 (6th Cir.2003).

### Retaliatory constructive demotion

■ Willoughby also asserted retaliation, claiming that after he submitted his letter responding to his demotion, Allstate constructively demoted him to the claims department at a reduced salary. He complains Allstate demoted him to a "do nothing" position with no chance for advancement that constructively forced him to request a transfer to the lower paying claims department job.

To prove retaliation, Willoughby must demonstrate that: (1) he was engaged in protected activity; (2) he was subject to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action.[2] *Johnson v. U.S. Dep't of Health and Human Servs.,* 30 F.3d 45, 47 (6th Cir.1994). Opposing an apparently discriminatory practice can be a protected act. *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1312–13 (6th Cir.1989).

Willoughby's claim fails on the first element—engaging in protected activity. There are only two paragraphs of Willoughby's three-page letter (containing twelve paragraphs) that arguably invoke Title VII complaints. First, his letter does mention three previous sexual harassment complaints against Moore, but this paragraph of his letter reads as if Willoughby is trying to impeach Moore's credibility (for making the complaint about Willoughby's joke), not that Willoughby was upset about unequal treatment. The only other part that arguably applies reads:

---

1. Allstate affirmatively does not assert on summary judgment that the higher standard for reverse discrimination applies. Additionally, as they are coextensive, the Title VII analysis subsumes the claims under the counterpart Tennessee statute. *See Thompson v.*

*City of Memphis,* 86 Fed.Appx. 96, 103 (6th Cir.2004).

2. The analysis is the same for Willoughby's identical retaliation claim under Tennessee law. *See Newsom v. Textron Aerostructures,* 924 S.W.2d 87, 96 (Tenn.Ct.App.1995).

This incident did not start anywhere close to being a racial event, but for some reason we have managed to escalate it to that level. Let me give you a few facts for thought. The ASD staffing is currently 56% African American. Of the last 12 employees to leave/terminate from ASD, 11 were white. It might be interesting to look at their exit interviews as a group, rather than one disgruntled employee at a time.

The district court properly granted summary judgment because the letter was "contesting the correctness of a decision made by his employer" rather than asserting discrimination. *Booker*, 879 F.2d at 1313. The "vague charge of discrimination in [Willoughby's internal letter] is insufficient to constitute opposition to an unlawful employment practice." *Id.*

**AFFIRMED.**