NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0234n.06

Case No. 20-5526

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SARA DAVIS,

        Plaintiff-Appellant,

v.

METRO PARKS AND RECREATION
DEPARTMENT and THE METROPOLITIAN
GOVERNMENT OF NASHVILLE AND
DAVIDSON COUNTY, TENNESSEE,

        Defendants-Appellees.

FILED
May 10, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

BEFORE: CLAY, GILMAN, and THAPAR, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Sara Davis appeals the district court's decision to grant summary judgment to her former employer, the Metropolitan Parks and Recreation Department, in the Nashville, Tennessee area. Plaintiff claims that her former employer retaliated against her in violation of 42 U.S.C. § 2000e-3(a) and Tenn. Code Ann. § 4-21-311(d). For the reasons set forth below, we affirm in part and reverse in part.

## I. BACKGROUND

### A. Factual History

Plaintiff Sara Davis was an employee at the Metropolitan Parks and Recreation Department in the Nashville, Tennessee area for over 38 years, from October 1978 to July 2017. During her tenure at the department, she worked in two divisions: the Community Recreation Division, where she spent 15 years, and the Revenue Producing Division, where she spent the rest of her time until her retirement. Plaintiff had no disputes at her workplace until 2011, when the department hired

Tommy Lynch to be the Director of the Parks department. After Director Lynch's appointment, Plaintiff claims that Director Lynch created a "good ole' boys atmosphere," [Appellant's Br. 12], which he formalized in 2013 by merging the application process for two Assistant Director positions in Special Services and Community Programs. For the Special Services Director position in particular, Director Lynch held the position open for two years before the application process began in 2013. Plaintiff then applied for the position of Assistant Director for Special Services; her position as Superintendent of Golf was one level below that position. After panel interviews for both positions, the hiring committee ranked Plaintiff as number "1" in the process.

After completing the application process, Plaintiff ultimately received the Community Programs position, while long-time male employee John Holmes received the Special Services position. Davis believed that her experience in the Revenue division made her the most qualified candidate for the Special Services position. Plaintiff, noticeably upset, spoke to Director Lynch about what she claims was an unusual hiring process to fill both positions at the same time. Director Lynch informed her that her new opportunity would give her the experience to eventually become the director of the department. In a later deposition, Director Lynch also said that he did not believe that John Holmes could successfully perform the job in Community Programs.

Following the job process, believing that she had been a victim of sex discrimination, Plaintiff filed a complaint with the Human Resources department of the Metropolitan Government in June of 2013. The Human Resources department reviewed Plaintiff's complaint and determined that the application process had not violated any of the government's civil service rules or policies. But Plaintiff alleges that the day after her complaint, she began to experience retaliation. First, Director Lynch's assistant refused Plaintiff access to her own personnel file, to which Plaintiff previously had easy access. Immediately thereafter, Plaintiff alleges that Director Lynch

threatened her job, informing her that she might not last in the department for the remaining year and four months until her eligible retirement date. Soon after, an "open door" policy to speak with Mr. Lynch, which the Director granted to everyone in the department, no longer applied to Plaintiff. In bi-weekly meetings, Director Lynch made sure someone else always sat in on his interactions with Plaintiff. After Mr. Lynch heard that Plaintiff had made a complaint, a co-worker stated that Director Lynch's feelings were hurt, and that he questioned Plaintiff's "loyalty" for accusing him of sex discrimination. (ECF No. 47-7 at PageID # 543-549.)

Four months later, Plaintiff received a performance evaluation. In sum, Plaintiff received scores that were the lowest of her career to date and the lowest possible on the evaluation form. Plaintiff, believing the evaluation to be illegitimate, returned it back to Mr. Lynch, who subsequently amended the evaluation with higher scores.

In June 2014, almost a year after Plaintiff's initial sex discrimination complaint, Director Lynch issued a written reprimand against her for missing a work meeting. In an email titled "Employee Warning," Mr. Lynch wrote the following:

> You missed the leadership team meeting yesterday. I want to document to you that this is not acceptable. When you failed to attend the Park Board meeting this spring you were the first division head in my memory to have done so and I failed to counsel you at that time. I cannot allow this to become a habit. Put meetings in your schedule and discipline yourself to be in attendance on time from this point forward. (ECF No. 40-7 at PageID # 227.)

In January 2015, a year and a half after Plaintiff's initial sex discrimination complaint, Director Lynch issued another written reprimand against Plaintiff. This time, Mr. Lynch chastised Plaintiff for missing a work deadline. In his email to Plaintiff titled "failure to meet deadlines and inefficient performance of duties," Mr. Lynch stated as follows:

> It is disappointing when another Department is working with our Department to adjust a job description for a position we request and not only do we fail to meet the deadline to provide information, we fail to respond to the proper job

> classification discussed in the meeting with Human Resources. In the meeting with Jason Lusk it was discussed to utilize most of the job description from "Recreation Center Supervisor" and make minor adjustments to it. The deadline was set and on Monday of this week after failing to meet the agreed upon deadline, you submitted something referencing the "Recreation Leader" job description. This has caused confusion from both our Department's standpoint as well as theirs. I received your e-mail providing an excuse for Sherry Hipps not meeting the deadline, but had the assignment been handled properly by you, the excuse provided would not have entered into the situation.
>
> Consider this as a written reprimand on both issues.
>
> Furthermore, I understand there is a deadline of Monday to follow up on this project. I do not wish to call you in on Monday, a day you requested off, so make every effort to have the deadline met and submitted in time. I have directed both Pam Crenshaw and Jason Lusk to proceed on adjustments to the Recreation Center Supervisor job description as discussed in the meeting last week. (ECF No. 40-8 at PageID # 228.)

Following this reprimand, Plaintiff went to speak with Mr. Lynch about the email, and she claims that he spoke to her like a child and dismissed her with a wave of his hand. Director Lynch admitted to, at times, "being irate" and raising his voice at Plaintiff and other employees. (ECF No. 50 at PageID # 606.) Plaintiff claims that Mr. Lynch did not reprimand other Assistant Directors for similar conduct, but Director Lynch claims that he verbally reprimanded other employees for being unprepared at meetings. In his deposition, Mr. Lynch testified that he had also issued written reprimands to other employees for unrelated issues. For instance, Mr. Lynch reprimanded a separate employee, Jim Hester, for improperly cutting trees without his permission. In another instance, Director Lynch reprimanded another employee for not installing air-conditioning in a recreation center in a predominately black neighborhood.

In July 2015, two years after Plaintiff's initial sex discrimination complaint, Director Lynch wrote another work evaluation, where he gave Plaintiff's performance a 2.88 rating. On the performance scale, two was considered acceptable and three was considered commendable. In Mr. Lynch's rationale for the score, he wrote:

> Sally has done a credible job in Recreation but her relationship with peers in the department and her supervisor continues to deteriorate. She has been reprimanded within the past year: and yet seems to think she is entitled to not respond to her supervisor in certain situations. (ECF No. 63 at PageID # 661.)

Plaintiff disputes that her relationships with peers had deteriorated. And despite a feeling that Mr. Lynch was retaliating against her, in January 2016, Plaintiff received a pay raise alongside all other Assistant Directors.

In April 2016, almost three years after Plaintiff's initial sex discrimination complaint, Director Lynch informed Plaintiff that she would now be reporting to Monique Odom, who held an equivalent rank as Plaintiff in the department. Around the same time, Plaintiff also alleges Director Lynch ceased speaking with her except at group meetings. In an email to Plaintiff, Mr. Lynch stated as follows:

> The emotional cloud that interferes with a truly productive supervisor/subordinate relationship compels me to make the decision for you to be totally supervised by Monique Odom, effective immediately. I know by removing me from personally supervising you will help details get handled appropriately. As of today, I am concerned that decisions were made pertaining to the summer enrichment program and not relayed to me in a timely fashion. Decisions that directly contradict statements that I had made to the Mayor in our budget hearing (based on information I had received from you) that now have changed. Additionally, I had never received a report from you pertaining to the meeting held at TSU. I expect a detailed written report by you no later than noon Monday, May 2. I feel had you been dealing directly with Monique, that information may have been more readily distributed. Copy me on all correspondence between the two of you that are related to community recreation employees, programs, and facilities. This in no way removes you from meeting my expectations as a division head. It simply resolves the issue of friction created by misperceptions and unresolved past circumstances.

> The issues within the Recreation Division which you relayed in our meeting, Tuesday, pertaining to fees being collected and long term Recreation employees being reluctant to enforce the application of said fees, further solidify my decision to place you as the leader of that division. You have the background as well as the education and the tools needed to address all of these work issues. By reporting to Monique, you will be the first division head to do so. Everyone will be following down this path, shortly. (ECF No. 47-1 at PageID # 413.)

In September 2016, more than three years after Plaintiff made her initial discrimination complaint, Director Lynch reprimanded Plaintiff once again. In an email titled "Old Hickory – failure to follow instructions – inefficient performance of duties," Mr. Lynch wrote:

> Below is an e-mail I sent last week with detailed instructions. I had received assurances from Monique [Odom] on Tuesday that the two of you discussed the situation and Monique had your attention and your loyalty. That is not the case. As of this morning in a conversation with Jackie I found out you had ignored both my e-mail and Monique's reminder. This is totally unacceptable for a division head to ignore the Director of the Department's instructions. The next incident of any failure on your part to follow my instructions or any failure on your part to fulfill my written instructions will be considered a willful act of insubordination and will be dealt with accordingly. (ECF No. 47-1 at PageID # 407.)

In January 2017, three and a half years after Plaintiff's initial complaint, Director Lynch moved Plaintiff's longtime assistant Robert Benson to another division. Neither Mr. Benson, nor Ms. Davis, was provided with any explanation. Monique Odom, who was now Plaintiff's supervisor, said she supported the move and had planned to move Mr. Benson once Mr. Lynch retired and she became director of the department. A few weeks later, on January 25, 2017, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC), arguing that she had been subjected to harassment and intimidation after filing a sex discrimination complaint with Human Resources. Six months after her EEOC filing, on July 2, 2017, Plaintiff voluntarily retired.

## B. Procedural History

On April 28, 2017, Plaintiff filed a complaint in the district court, alleging that Defendant Metro Parks retaliated against her in violation of Title VII of the Civil Rights Act and the Tennessee Human Rights Act. Plaintiff requested a permanent injunction against Metro Parks, prohibiting it from future discrimination or retaliation, ordering it to conduct anti-discrimination trainings, and requiring it to provide $300,000 in back pay, lost benefits, and compensatory damages. In response, Metro Parks claimed that no tangible employment retaliation took place

against Plaintiff, that the department took prompt action to address any alleged misconduct upon notice, and that there was no policy, custom, or practice of discrimination by Metro Parks. On May 1, 2019, Metro Parks subsequently filed a motion for summary judgment, arguing that all of Plaintiff's retaliation claims were time barred; that neither any evaluation or reprimand against Plaintiff impacted her career; that Plaintiff could not show causation because there was no temporal proximity; that Director Lynch's behavior consisted of ordinary trials of the work place; and that Plaintiff could not establish a causal link between Director Lynch's behavior and her original sex discrimination complaint. Plaintiff then filed a response which, in summary, argued that Director Lynch's behavior was part of ongoing retaliatory harassment, and that there was sufficient evidence to prove a causal link between Director Lynch's behavior and Plaintiff's original complaint in 2013. After further litigation, on April 20, 2020, the district court granted Metro Park's motion for summary judgment, ruling that the majority of Plaintiff's claims were time-barred; that her remaining claims failed as a matter of law; and that her claims, under a hostile workplace theory, did not constitute a violation of law. Plaintiff now appeals.

## II.  DISCUSSION

### A.  Plaintiff's Retaliation Claims under Title VII and the Tennessee Human Rights Act

#### 1.  Standard of Review

We review a district court's determination that a complaint was filed outside of the statute of limitations de novo. *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009) (citing *Wolfe v. Perry*, 412 F.3d 707, 713 (6th Cir. 2005)).

## 2. Relevant Legal Principles

Under Title VII of the Civil Rights Act of 1964, a plaintiff must file a discrimination complaint within 300 days of an alleged unlawful employment practice covered by the statute.[1] 42 U.S.C. § 2000e–5(e)(1). The statute's filing provision "specifies with precision" the prerequisites that a plaintiff must satisfy before filing suit. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). A claim will be "time barred if it is not filed within these limits." *Id.* An alleged unlawful employment practice involves a "discrete retaliatory act or discriminatory act." *Id.* at 110. Each discriminatory act constitutes a "single occurrence even when it has a connection to other acts." *Id.* at 111. This can mean that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. Each and every discriminatory act "starts a new clock for filing charges alleging that act." *Id.* For example, in *Morgan*, the court held that "[w]hile Morgan alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through . . . the date he was fired, only incidents that took place within the timely filing period are actionable." *Id.* at 114. Similarly, in *Delaware State College v. Ricks*, the court ruled that a plaintiff "could not use a termination that fell within the limitations period to pull in [a] time barred discriminatory act." *Morgan*, 536 U.S. at 113 (citing *Delaware State College v. Ricks*, 449 U.S. 250, 253 (1980)).

Under the Tennessee Human Rights Act, Plaintiffs must file retaliation claims within one year of the alleged unlawful employment practice. Tenn. Code Ann. § 4-21-311(d). Although the "language of Title VII and the THRA differ slightly, Tennessee courts have concluded that the

---

[1] According to 42 U.S.C. § 2000e–5(e)(1), Plaintiffs typically receive 180 days to file a claim. If they have previously initiated proceedings with a state or local agency, they will be granted 300 days to file suit in federal court. In this case, Plaintiff initiated proceedings with the Human Resources department of the Metropolitan Government in 2013, and then filed with the EEOC in 2017. Accordingly, Plaintiff is granted the extended statute of limitations of 300 days.

legislature intended the THRA to be coextensive with federal law and have indicated that they will look to federal case law interpreting Title VII for guidance in enforcing the THRA." *Thompson v. City of Memphis*, 86 F. App'x 96, 103 (6th Cir. 2004). Therefore, the court may "subsume the analysis of [Plaintiff's] claims under the THRA within its analysis under Title VII." *Id.*

On rare occasions, the statute of limitations "may be subject to equitable tolling." *Austion v. City of Clarksville*, 244 F. App'x 639, 647 (6th Cir. 2007). But the statute of limitations is not to be "disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984).

### 3.   Application to the Matter at Hand

The district court correctly decided that the majority of Plaintiff's Title VII claims were time barred. Title VII required Plaintiff to file her retaliation claim within 300 days "after the alleged employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). Plaintiff filed a claim with the EEOC on January 25, 2017, which meant any occurrences prior to March 31, 2016 were untimely. Additionally, under the THRA, Plaintiff needed to file her claim within one year of the alleged retaliation, which meant acts of retaliation prior to January 25, 2016 were time barred under this statute. Tenn. Code Ann. § 4-21-311(d).

Before this court, Plaintiff alleges several discriminatory acts occurred: 1) Director Lynch removed her from his open-door policy on June 28, 2013; 2) he required others to sit-in on their weekly meetings soon thereafter; 3) he threatened her job on June 28, 2013; 4) he gave Plaintiff negative work evaluations on October 31, 2013 and July 8, 2015; 5) he issued three written reprimands on June 17, 2014, January 30, 2015, and September 16, 2016; 6) he talked down to her "like a child" on January 30, 2015; 7) he placed Plaintiff under the supervision of a peer in the

department on April 28, 2016; and 8) he transferred Plaintiff's assistant to another division on January 3, 2017.

Because most of these events occurred prior to March 31, 2016 for Title VII relief, and January 25, 2016 for relief under the THRA, only three incidents are timely here: 1) a written reprimand issued on September 16, 2016; 2) Director Lynch placing Plaintiff under the direct supervision of her peer Monique Odom on April 28, 2016; and 3) Director Lynch transferring Plaintiff's assistant to a different division on January 3, 2017.

Plaintiff argues that none of her claims are time-barred because, under *Green v. Brennan*, 136 S. Ct. 1769 (2016), retaliatory harassment claims are not barred by the 300-day mark. [Appellant's Br. 24.] In *Green*, the court held "a limitations period commences when the plaintiff has a complete and present cause of action" for a constructive-discharge claim, i.e., when the plaintiff resigns. *Id.* at 1776. But Plaintiff does not argue she was constructively discharged from her job; rather, she argues that her Director retaliated against her for her sex discrimination complaint and then created a hostile work environment. Before this court, Plaintiff has brought claims of retaliation and a hostile work environment. For her retaliation claims, her employer's actions are considered "discrete retaliatory or discriminatory act[s]." *Morgan*, 536 U.S. at 110. And each act constitutes a "single occurrence even when it has a connection to other acts." *Id.* at 111. Those discrete acts must be judged individually. Accordingly, the district court correctly decided that Plaintiff's claims prior to March 2016 were time-barred "even [though] they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113.

**B. Plaintiff's Remaining Retaliation Claims**

**1. Standard of Review**

"[T]his court reviews a district court's grant of summary judgment de novo." *Rd. Sprinkler Fitters Local Union No. 669 v. Dorn Sprinkler Co.*, 669 F.3d 790, 793 (6th Cir. 2012). Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a dispute as to a material fact when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Smith v. Perkins Bd. Of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013). The court must evaluate the evidence in a motion for summary judgment "in the light most favorable to the party opposing the motion." *Nickels v. Grand Trunk W. R.R.,* 560 F.3d 426, 429 (6th Cir. 2009).

**2. Relevant Legal Principles**

"The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Title VII does not create "a general civility code for the American workplace" and "it is important to separate significant from trivial harms." *Id.* at 68. A plaintiff proves "unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell Douglas* framework." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). Direct evidence is "evidence, which if believed, *requires* the conclusion that unlawful retaliation was a motivating factor in the employer's action." *Id.* (emphasis in original). Direct evidence "proves the existence of a fact without any inferences or presumptions." *Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir. 1999) (table decision).

Without direct evidence, Plaintiff must prove her claim through the *McDonnell Douglas* framework, where a *prima facie* case is shown after four factors are met: 1) Plaintiff was engaged in a protected activity; 2) the exercise of protected rights was known to the employer; 3) the employer took an adverse employment action against Plaintiff; and 4) there was a causal connection between the adverse employment action and the protected activity. *See Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). An adverse employment action occurs when a "reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624, 639 (6th Cir. 2009). How a reasonable worker reacts is an "objective standard." *Burlington Northern*, 548 U.S. at 68-69. And an employee's decision to report discriminatory behavior does not "immunize that employee from petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68.

A causal connection between an employer's actions and a protected activity is established when the protected activity was the "but-for" cause of the alleged adverse action by the employer. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). But-for causation can be established by proving that the employer treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence. *Parnell v. West*, 114 F.3d 1188 (6th Cir. 1997) (citing *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986)) (table decision). But Plaintiff may still establish causality if

she can "couple temporal proximity with other evidence of retaliatory conduct." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

### 3. Plaintiff's Remaining Retaliation Claims Fail as a Matter of Law

As stated earlier, Plaintiff has brought three timely claims of retaliation: Director Lynch 1) placing Plaintiff under the direct supervision of Monique Odom on April 28, 2016; 2) issuing a written reprimand to Plaintiff on September 16, 2016; and 3) transferring Plaintiff's assistant to a different division on January 3, 2017.

None of Plaintiffs' timely retaliation claims present direct evidence of retaliation because none of Director Lynch's actions "*require* the conclusion that unlawful retaliation was a motivating factor in [his] action[s]." *Abbott*, 348 F.3d at 542. Rather, because they require us to make "inferences or presumptions" to conclude that Director Lynch intended to retaliate against Plaintiff for her sex discrimination complaint three years earlier, we must turn to the *McDonnell Douglas* framework. *Norbuta*, 181 F.3d at *1.

Defendant does not dispute that the first two factors of the *McDonnell Douglas* framework are satisfied. Plaintiff filed a sex discrimination complaint with Human Resources, and the department informed Director Lynch of that action. *See Taylor*, 703 F.3d at 336 (citing the *McDonnell Douglas* framework, which included establishing that 1) Plaintiff was engaged in a protected activity and 2) the exercise of protected rights was known to the employer). Instead, the question before us is whether Defendant took an adverse employment action against Plaintiff and whether there was a causal connection between the employment action and her sex discrimination complaint. *See id.*

### i. Director Lynch placed Plaintiff under direct supervision of Ms. Odom

On April 28, 2016, Director Lynch placed Plaintiff under the direct supervision of her peer Monique Odom at the department. This was the first time that this had been done at the department, even though Mr. Lynch informed Plaintiff that it would be a more common occurrence moving forward. In his same email explaining why he placed her under the supervision of Ms. Odom, Mr. Lynch stated that there was an "emotional cloud that interferes with a truly productive supervisor/subordinate" between them. (ECF No. 47-1 at PageID # 413.) In the district court, Defendant admitted that the action could be "construed as [a] materially adverse employment action." (ECF No. 63 at PageID # 671.) Before this court, Defendant has not conceded as such, but Plaintiff argues that the action could be construed as a demotion. After the change, Ms. Davis became Ms. Odom's subordinate even though they held functionally similar positions within the department. A demotion could "dissuad[e] a reasonable worker from making or supporting a charge of discrimination" and, as a result, could evidence a genuine issue of material fact that would preclude summary judgment. *Garner*, 554 F.3d at 639.

But equally important to the *McDonnell Douglas* framework is causality, where Plaintiff is required to link the adverse action to her sex discrimination complaint. In his email to Plaintiff, Director Lynch wrote that, "[b]y reporting to Monique, you will be the first division head to do so." (ECF No. 47-1 at PageID # 413.) To establish causation, Plaintiff argues that Director Lynch treated her "differently than similarly situated employees." *Nguyen*, 229 F.3d at 563. However, although Plaintiff was the first, Director Lynch made the change for other division heads, which included a request for approval from the Civil Service Commission. In that request, Director Lynch petitioned for Ms. Odom "to have the leadership, supervisory and oversight of the other division heads, in order to get business done properly." (ECF No. 40-11 at PageID # 248.) Eventually, Ms.

Odom supervised all other assistant directors within the department, thus suggesting that Plaintiff was not "treated . . . differently from similarly situated employees." *Nguyen*, 229 F.3d at 563.

Second, two years and ten months passed between Plaintiff's original sex discrimination complaint and the adverse employment action. Prior to this decision, we have ruled that, in retaliation cases, the "proximity of time have all been short periods, usually less than six months." *Parnell*, 114 F.3d at *3. In other instances, we have ruled that "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525. Under these precedents, we find no causal link between Plaintiff's complaint and Director Lynch's directive. After two years and ten months passed, Plaintiff would be unable to prove that "but-for" her discrimination complaint in June 2013, Director Lynch would not have transferred her to Ms. Odom's supervision in April 2016. *Nassar*, 570 U.S. at 360. With no temporal proximity shown, Plaintiff has offered no other evidence other than her own belief that Director Lynch treated her differently than male employees. Under an "objective standard," we reject Plaintiff's claim based solely on her personal beliefs. *Burlington Northern*, 548 U.S. at 68-69. Therefore, we conclude that the district court properly granted summary judgment to Defendant on this issue.

### ii.    Lynch's Written Reprimand of Plaintiff

On September 16, 2016, Director Lynch issued a written reprimand to Plaintiff for ignoring his instructions. He then sent her an email stating:

> Below is an e-mail I sent last week with detailed instructions. I had received assurances from Monique [Odom] on Tuesday that the two of you discussed the situation and Monique had your attention and your loyalty. That is not the case. As of this morning in a conversation with Jackie I found out you had ignored both my e-mail and Monique's reminder. This is totally unacceptable for a division head to ignore the Director of the Department's instructions. The next incident of any

failure on your part to follow my instructions or any failure on your part to fulfill my written instructions will be considered a willful act of insubordination and will be dealt with accordingly. (ECF No. 47-1 at PageID # 407.)

Plaintiff argues that the email above represented an unfair reprimand for not following a "minor directive." [Appellant's Br. 22]. She contends that she was singled out for a reprimand when male peers were not reprimanded for workplace errors. Director Lynch's email could not be reasonably construed as a materially adverse employment action against Plaintiff. Under the objective standard provided in *Burlington,* a reasonable person would not be dissuaded from making a charge of discrimination because the email, at worst, is one of many "petty slights or minor annoyances that often take place at work." *Burlington Northern*, 548 U.S. at 67-69. The written reprimand would be considered a "trivial harm," and particularly, one "that all employees experience" in the workplace. *Id*. at 68. In a separate retaliation case, we have held that a "written reprimand without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action." *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 566 (6th Cir. 2012). In the present case, Plaintiff was never punished as a result of the written reprimand and, in fact, received a raise during her tenure. Since Plaintiff has been unable to show any "material adverse consequences" resulting from the written reprimand, we find that no materially adverse employment action occurred here. *See Creggett*, 491 F. App'x at 566.

Second, to prove causation, Plaintiff argues that the email reflects that Director Lynch treated her differently from male employees. But the record reflects that Director Lynch had also chastened male employees. On multiple occasions, Mr. Lynch issued written reprimands to male employees for not completing their tasks effectively, including for poorly cutting trees in a recreation area and not installing air conditioning for a facility located in a black neighborhood.

Plaintiff has failed to establish "but-for" causation because she was not "treated differently than similarly situated employees." *Nguyen*, 229 F.3d at 563. Nor was an "adverse action . . . taken shortly after the plaintiff's exercise of protected rights" inasmuch as Director Lynch's reprimand came three years after her sex discrimination complaint. *Id.* Therefore, the district court correctly entered summary judgment in Defendant's favor on this issue.

### iii. Director Lynch's transferral of Plaintiff's assistant

On January 3, 2017, Director Lynch transferred Plaintiff's long-term assistant of 14 years, Robert Benson, to another division within the department. Neither Benson nor Plaintiff were provided a reason for the transfer. Plaintiff argues that "having one's loyal assistant being reassigned might dissuade someone from filing a discrimination complaint." [Appellant Br. 34] The district court reached the same conclusion. Director Lynch's decision to remove Plaintiff's assistant without notice "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Garner*, 554 F.3d at 639 (6th Cir. 2009). A move to isolate Plaintiff in the workplace could constitute an adverse employment action under *Garner*.

In tandem, however, Plaintiff must establish a causal connection between the adverse action and her original sex discrimination complaint. Several actions run counter to establishing such a connection. Mr. Benson had previously worked in the division to which he was transferred. In his deposition, Director Lynch stated that Mr. Benson was assigned to help Plaintiff in her new role as Assistant Director of Community Programs, but the move was always meant to be temporary. In addition, Monique Odom, who was now Plaintiff's supervisor, supported the move and had planned to move Mr. Benson once Mr. Lynch retired and Ms. Odom became director of the department. Further, Director Lynch moved Plaintiff's assistant to another division three and a half years after the filing of Plaintiff's sex discrimination complaint. It does not appear that "but

for" Plaintiff's sex discrimination complaint in 2013, Mr. Benson would not have been transferred in 2017. *See Nassar*, 570 U.S. at 360. Plaintiff's claim fails as a result of the lack of temporal proximity coupled with the other reasons for Mr. Benson's transfer.

## C. Plaintiff's Claims Under a Hostile Workplace Theory

### 1. Relevant Legal Principles

Alongside her discrete retaliation claims, Plaintiff argues that she was subjected to retaliatory harassment. Stated differently, she has brought her retaliation claims under a hostile workplace theory. Retaliation claims, brought under a hostile workplace theory, are statutorily distinct from hostile work environment claims. While both arise from Title VII, the "provision[s] are not coterminous." *Burlington Northern*, 548 U.S. at 67. Hostile workplace claims are derived from Title VII's anti-discrimination provision. *See Morgan*, 536 U.S. at 116; 42 U.S.C. § 2000e-2(a)(1). As a result, charges brought under "Title VII's anti-discrimination provision protects an individual only from employment-related discrimination," or in other words, discrimination with respect to an employee's "compensation, terms, conditions, or privileges of employment." *Burlington Northern*, 548 U.S. at 61. By contrast, Title VII's anti-retaliation provision does not have such limits. A charge under 42 U.S.C. § 2000e-3(a) "extends beyond workplace-related or employment related retaliatory acts and harm." *Burlington Northern*, 548 U.S. at 67. Therefore, in bringing a claim of retaliatory harassment, we assess solely whether the conduct of Plaintiff's employer "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks omitted).

As part of that review, we look into "all the circumstances . . . includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance." *Harris*, 510 U.S. at 23. Further, we look to whether the conduct of Plaintiff's employer included "repeated abusive discriminatory comments or treatment." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015). Retaliatory harassment claims by "their very nature [involve] repeated conduct." *Morgan*, 536 U.S. at 115. In contrast to discrete acts of discrimination, a hostile workplace environment occurs over "a series of days or perhaps years" and "therefore cannot be said to occur on any particular day." *Id.* Accordingly, we may review "some of the component acts of the hostile work environment [that] fall outside the statutory time period." *Id.* at 117. But in reviewing allegations that fall outside the statutory period, Plaintiff must still show that a "reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee would believe that the conduct complained of was unlawful." *Yazdian*, 793 F.3d at 646 (internal quotation marks omitted). That reflects the purposes of the antiretaliation provision, which "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern*, 548 U.S. at 67.

## 2. The Nature of Plaintiff's Work Environment

The district court granted summary judgment to Defendants after describing certain events in Plaintiff's workplace that did not reflect retaliatory harassment. In its view, Plaintiff's retaliation claims, brought under a hostile workplace theory, failed as a matter of law because her employer's conduct was not severe or pervasive enough to create a hostile work environment. For instance, the district court noted that Plaintiff "maintained employment until retirement and even had her salary increased" and "was still able to meet productively with [her supervisor,]" despite being removed from his open-door policy. (ECF No. 63 at PageID # 674.) All of the events the district court described related solely to the terms and conditions of Plaintiff's employment despite the fact that Title VII's anti-retaliation provision does not limit its purview to only employment-related

conduct. *See Burlington Northern*, 548 U.S. at 67. When Plaintiff argued she was subjected to retaliatory harassment, in violation of 42 U.S.C. § 2000e-3(a), the law required the district court to look beyond the terms and conditions of her employment, and assess whether a jury could find the cumulative actions of her employer could "dissuad[e] a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. But upon review, the district court employed a standard too stringent to be in alignment with the statutory language of 42 U.S.C. § 2000e-3(a).

Further, by solely describing individual events in Plaintiff's workplace as not indicative of a hostile workplace environment, the district court did not assess "the cumulative effect of [these] individual acts" to reflect that a hostile work environment "cannot be said to occur on any particular day." *Morgan*, 536 U.S. at 115. In essence, plaintiff's allegations must be assessed as if they "constitute one unlawful employment practice." *Id.* at 117. Because the district court failed to apply the proper standard to Plaintiff's retaliatory harassment claim, we reverse its decision to grant summary judgment to Defendants. We remand for the district court to determine whether the conduct of Plaintiff's employer, in a cumulative assessment, would have dissuaded a reasonable employee from making a charge of discrimination.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's decision, except as to Plaintiff's retaliatory harassment claim. As to that claim, we reverse the district court's decision to grant summary judgment in favor of Defendants and remand for proceedings consistent with this opinion.